Submitted on record and briefs December 22, 1977, reversed and remanded February 21, 1978

GREEN, *Petitioner,*
*v.*
ADULT AND FAMILY SERVICES
DIVISION et al, *Respondents.*
(No. 2-28/01-MZK473, CA 8852)
574 P2d 1148

Robert B. Johnstone, Legal Aid Service, Portland, filed the brief for petitioner.

James A. Redden, Attorney General, Al J. Laue, Solicitor General, and William F. Nessly, Jr., Assistant Attorney General, Salem, filed the brief for respondents.

Before Schwab, Chief Judge, and Lee, Joseph and Buttler, Judges.

JOSEPH, J.

## JOSEPH, J.

Claimant has sought review of an order of the Adult and Family Services Division (AFSD) which denied her claim for assistance to meet emergency needs. The facts are not in dispute. In December, 1976, claimant, an Aid to Dependent Children recipient, obtained federally matched emergency assistance to purchase a crib for her infant child. In April, 1977, just after she had cashed her regular assistance check, claimant's wallet was stolen. Unable to meet expenses for shelter and other basic needs, she applied for assistance from AFSD. The legitimacy of her need is not questioned.

Under 45 C.F.R. § 233.120(b)(3) and AFSD's Aid to Dependent Children/General Assistance Manual (ADC/GA Manual) § II-II-M, eligibility for federally matched emergency assistance is limited to one thirty-day period in any twelve consecutive months. Claimant, having received emergency assistance the previous December, was ineligible for federally matched funds in April. Section II-VII-C(2) of the ADC/GA Manual, concerning special needs provides:

"If an ADC recipient is not eligible [for federally matched Emergency Assistance] because of having received Emergency Assistance in the prior twelve months an exception may be made by the Branch Manager to authorize payment on GA."

The branch manager denied the claim, citing § II-II-M and explaining:

"[Claimant] has had money stolen 2 months in row. Had E5 for bed on 12/27/76. Needs money for rent and food stamp purchase. All community resources used last month. Branch denied GA maintenance need because of previous E5."

Claimant requested a hearing. The hearings officer made no finding as to why general assistance under § II-VII-C(2) was denied, but concluded that there was

"* * * no capriciousness nor neglect in the branch refusal. There was no evidence offered to cause the

[ 637 ]

hearing officer to overturn a decision based on the manager's judgment."

Although there was testimony by a branch representative suggesting that § II-VII-C(2) may not have applied to claimant's case at all,[1] the hearings officer implicitly found, and AFSD concedes, that that section is applicable.

Claimant first contends that she is entitled to benefits under § II-VII-C(2) because the standards for eligibility under that section are the same as under § II-II-M, which specifically provides for replacement of lost or stolen funds. We find no support for that contention in the two regulatory sections.

She also argues that the final order denying assistance is invalid because it fails to adequately set forth the reasoning underlying denial of assistance under § II-VII-C(2).

In *Home Plate, Inc. v. OLCC,* 20 Or App 188, 190-91, 530 P2d 862, 863 (1975), we stated:

"If there is to be any meaningful judicial scrutiny of the activities of an administrative agency—not for the purpose of substituting judicial judgment for administrative judgment but for the purpose of requiring the administrative agency to demonstrate that it has applied the criteria prescribed by statute and by its own regulations and has not acted arbitrarily or on an ad hoc basis—we must require that its order clearly and precisely state what it found to be the facts and fully explain why these facts lead it to the decision it makes.

---

[1] "Special needs" are defined in § II-VII-C(1) of the ADC/GA Manual as "variable cost requirements in addition to the standard allowances for food, clothing, shelter, and personal incidentals." The branch representative testified as follows:

"We have been unable to help in this situation because of the use of E5 for a non-maintenance need first. As I understand it Policy and Standards is interpreting this manual section to read this way: if the person had used, had had a need—if the robbery occurred first we could have used E5 to replace maintenance needs, and then if she'd had a nonstandard need we could have replaced that under GA. Unfortunately we're working under the policy which says we can't do it the other way around; * * *"

Brevity is not always a virtue. The less circumscribed an agency is by the legislative grant of power to it and by its own regulations augmenting that grant, the more detailed and precise its explanation of its actions exercising the powers granted to it must be."

In *McCann v. OLCC,* 27 Or App 487, 495, 556 P2d 973, 977 (1976), *rev den* (1977), we noted that

"\* \* \* where decisional factors cannot be set out precisely beforehand, but are set out instead as general criteria, we look to the decision itself for a rational exposition of the facts and the reasoning which leads from the facts to the conclusion."

By those standards, the order in the instant case was inadequate. Claimant has aptly characterized the order as stating in effect merely that "the welfare department has exercised its undefined discretion and there is no proof that it was wrong." Such an order clearly violates the principles set forth in *McCann* and *Home Plate* and must, therefore, be reversed.

Reversed and remanded.

**SCHWAB, C. J.,** concurring.

I agree with the reasoning of and the result reached by the majority, but wish to add a few comments. Although the regulation in question does not specifically so state, it seems rather apparent to me that the purpose of the regulation in question is to provide each branch manager with a fund which the manager can use in an extreme case to alleviate the harshness of the regulations limiting emergency assistance to one 30-day period in any 12 consecutive months. Thus the grant of discretion to branch managers is very broad and one which by its very nature involves primarily subjective judgments.

While the rule enunciated in *Home Plate, Inc. v. OLCC,* 20 Or App 188, 530 P2d 862 (1975), and *McCann v. OLCC,* 27 Or App 487, 556 P2d 973 (1976), *rev den* (1977), applies, not all the language of those decisions is necessarily pertinent in a case such as the

one before us. I am thinking particularly of that part of *Home Plate* which states:

> "* * * The less circumscribed an agency is by the legislative grant of power to it and by its own regulations augmenting that grant, the more detailed and precise its explanation of its actions exercising the powers granted to it must be. * * *" 20 Or App at 190-91.

Here, a simple statement of reason, a statement sufficient to show an exercise of discretion as distinguished from a decision based on caprice, would have been sufficient.

Further, I think this case demonstrates that with the best of intentions the makers of administrative law are, in some instances, drowning people in a sea of due process. If emergency assistance is going to be of value as such, it has to be available before the emergency has destroyed the one who needs it. The emergency, if it existed, occurred in April of 1977. In February of 1978, after wending her way through administrative channels to the Court of Appeals, the claimant is told to wend her way back for still further proceedings which sometime later in 1978 may or may not produce some funds to meet an April 1977 emergency. And if she is not entitled to those funds, and I do not read the majority opinion as implying that she is or is not, the government will have won a truly pyrrhic victory. If her application had been honored in the first place, I am certain that the amount of the grant would have been infinitesimal as compared to the cost to the government of litigating her claim. Those costs include claimant's legal services. Obviously she could not have afforded a lawyer had Legal Aid not come to her assistance—at substantial public expense.

There are many claims against government agencies which involve people of limited means. Even given unlimited means, does due process demand a system so complex and costly in terms of both time and money that victory for either party is inevitably a financial

disaster for both? Various procedures have been provided within the judicial system which at least partially meet the problem—witness the small claims court and the provision for limited review only from judgments of municipal courts.

Insofar as administrative procedures are statutorily mandated, only the legislature can change them. Insofar as we in the judicial branch flesh out and augment those procedures, we should be careful that our concern with due process manifests itself in rulings which do not create a system which destroys the substance that the form is ostensibly designed to protect. If administrative procedures are going to be of real benefit to the vast majority of people and to their governments, there is a need for a system of simple and expeditious review of cases such as the one before us.