Argued and submitted August 4, affirmed December 1, 1982

# ELLIOTT et al,
*Appellants,*

*v.*

# OREGON INTERNATIONAL MINING CO.,
*Respondent - Third-Party Plaintiff,*

(No. 7844, CA A23405)

654 P2d 663

Claud Ingram, Salem, argued the cause and filed the brief for appellants.

Charles P. Denkers, Hillsboro, argued the cause for respondent - third-party plaintiff. With him on the brief was William B. Murray, Portland.

Before Richardson, Presiding Judge, and Thornton and Van Hoomissen, Judges.

VAN HOOMISSEN, J.

## VAN HOOMISSEN, J.

Plaintiff appeals a trial court judgment order allowing defendant Oregon International Mining Co.'s motion for partial summary judgment and dismissing plaintiffs' complaint for general and punitive damages for damaging and destroying the surface, trees and fences on plaintiffs' property. We affirm.

Plaintiffs are holders of a patent issued by the United States under the Stock Raising Homestead Act of 1916, 43 USC § 291 *et seq* (1970), *repealed* § 702, Pub L No. 94-579, 90 Stat 2787 (1976).[1] That patent contains the following mineral reservation:

"Excepting and reserving, however, to the United States all the coal and other minerals in the lands so entered and patented, together with the right to prospect for, mine, and remove the same pursuant to the provisions and limitations of the Act of December 29, 1916 (39 Stat. 862)."

Defendant's predecessor, Sheedy, entered on plaintiffs' patented land in 1978 to prospect for minerals, 30 USC § 22 *et seq* (1976), and located placer mining claims on the property. 43 CFR §3831.1 (1981). Those unpatented claims were subsequently transferred to defendant, which presently conducts a mining operation on the property.

Plaintiffs filed this action against defendant in 1980. They relied on two Grant County ordinances, one of which prohibited surface mining in certain areas of the county, including plaintiffs' property, and the other of which excluded mining as a permissible use of plaintiffs' property.

Defendant answered.[2] By way of an affirmative defense, it alleged that plaintiffs' land was open to mineral entry under federal law and that it had entered and located mining claims pursuant to that law, 30 USC § 21 *et seq*

---

[1] Although the Federal Land Policy and Management Act of 1976 repealed Sections 1 through 8 of the Stock Raising Homestead Act of 1916, it did not terminate any valid lease, permit or patent existing on October 21, 1976. Section 701(a), Pub L No. 94-579 (1976)

[2] Defendant also filed a third-party complaint against Grant County seeking a declaratory judgment that the ordinances set forth in plaintiffs' complaint were unconstitutional. Grant County subsequently moved to dismiss, and the trial court granted the motion. No appeal was taken from that order.

(1976), and, thus, owned the possessory title to the mineral estate of plaintiff's property and the right to mine and recover minerals from that land. Defendant moved for partial summary judgment against plaintiffs, contending that pursuant to federal statutes and regulations the trial court lacked jurisdiction to regulate mining operations on federal property and, further, that the Grant County ordinances were unconstitutional, because they impermissibly interfered with mining on federal property.

At trial, plaintiffs contended that when mineral rights are located,[3] they are no longer federal property and may be regulated or prohibited by a state or county. Moreover, plaintiffs, for the first time, raised two federal statutes that permit a patentee to recover damages caused by the mineral claimant's mining operation, notwithstanding the possible constitutionality of the county ordinances.[4]

---

[3] 43 CFR § 38.31.1 (1981), provides, in pertinent part:

" * * * A location is made by (a) staking the corners of the claim, except placer claims described by legal subdivision where State law permits locations without marking the boundaries of the claims on the ground, (b) posting notice of location thereon, and (c) complying with the State laws, regarding the recording of the location in the county recorder's office * * *."

See McMullin v. Magnuson, 102 Colo 230, 78 P2d 964 (1938), for the difference between lode and placer claims.

[4] Section 9 of the Stock Raising Homestead Act of 1916 (43 USC § 299 (1976)) provides:

" * * * Any person qualified to locate and enter the coal or other mineral deposits, or having the right to mine and remove the same under the laws of the United States, shall have the right at all times to enter upon the lands entered or patented, as provided by said sections, for the purpose of prospecting for coal or other mineral therein, provided he shall not injure, damage, or destroy the permanent improvements of the entryman or patentee, and shall be liable to and shall compensate the entryman or patentee for all damages to the crops on such lands by reason of such prospecting. Any person who has acquired from the United States the coal or other mineral deposits in any such land, or the right to mine and remove the same, may reenter and occupy so much of the surface thereof as may be required for all purposes reasonably incident to the mining or removal of the coal or other minerals, first, upon securing the written consent or waiver of the homestead entryman or patentee; second, upon payment of the damages to crops or other tangible improvements to the owner thereof, where agreement may be had as to the amount thereof; or, third, in lieu of either of the foregoing provisions, upon the execution of a good and sufficient bond or undertaking to the United States for the use and benefit of the entryman or owner of the land, to secure the payment of such damages to the crops or tangible improvements of the entryman or owner, as may be determined and fixed in an action brought upon the bond or undertaking in a court of competent jurisdiction against the

After finding no dispute of material fact, the court determined that the only issue was whether the county ordinances were unconstitutional. The court concluded that the government retained a reversionary interest in the minerals not extracted by defendant and that Grant County could neither prohibit the government from regulating its property nor enforce zoning on property in federal ownership. The court entered summary judgment against plaintiffs and ordered the complaint dismissed with prejudice.[5]

Plaintiffs contend that the ordinances are constitutional and, alternatively, that they are entitled to recover under 43 USC § 299 and 30 USC § 54. Defendant argues that plaintiffs cannot now seek recovery under the federal statutes because they were not pleaded in their complaint and, thus, that the only issue before this court is the constitutionality of the county ordinances.

■ Although statutes of which the court takes judicial notice, ORS 40.090(1), need not be pleaded, *Fulton Ins. v. White Motor Corp.*, 261 Or 206, 222-23, n 4, 493 P2d 138 (1972), plaintiffs must allege sufficient facts in their complaint to bring themselves within the purview of the statutes. ORCP 18(A). Excepting those portions of the complaint concerning the ordinances, plaintiffs alleged:

principal and sureties thereon, such bond or undertaking to be in form and in accordance with rules and regulations prescribed by the Secretary of the Interior and to be filed with and approved by the officer designated by the Secretary of the Interior of the local land office of the district wherein the land is situate, subject to appeal to the Secretary of the Interior or such officer as he may designate * * *."

Additionally, 30 USC § 54 (1976), enlarging the liability of the mineral claimant, provides:

"Liability for damages to stock raising and homestead entries by mining activities. Notwithstanding the provisions of any Act of Congress to the contrary, any person who hereafter (after June 21, 1949) prospects for, mines, or removes by strip or open pit mining methods, any minerals from any land included in a stock raising or other homestead entry or patent, and who had been liable under such an existing Act only for damages, caused thereby to the crops or improvements of the entryman or patentee, shall also be liable for any damage that may be caused to the value of the land for grazing by such prospecting for, mining, or removal of minerals. Nothing in this section shall be considered to impair any vested right in existence on the effective date of this section."

[5] Although defendant's motion sought partial summary judgment, the trial court's order granted full summary judgment and dismissed plaintiffs' complaint.

"V

"Between April 1, 1980, and to the present time Defendant has entered upon Plaintiffs' said land, felled trees thereon, cut fences, trampled and destroyed the vegetation thereon, and generally conducted a surface mining operation thereon, all to Plaintiffs' damage in the sum of $25,000."

Plaintiffs made no allegations that their land was originally public land or that defendant obtained its mineral rights through federal legislation. Similarly, plaintiffs made no allegations which would bring them with the scope of either 43 USC § 299 (*i.e.,* that following defendant's entry and location of minerals on plaintiffs' land, defendant failed to (1) seek plaintiffs' consent to the removal of minerals or (2) pay damages agreed to by plaintiffs or (3) post a sufficient bond to secure payment of damages to the surface) or 30 USC § 54 (that defendant is liable under 43 USC § 299 and, additionally, caused damage to the value of the land for grazing).

■ ■  Moreover, plaintiffs did not respond to defendant's motion for summary judgment by asserting any of those allegations or by moving to amend their complaint. Rather, plaintiffs chose to stand on their single pleading.[6] That pleading did not allege sufficient facts to constitute a claim for relief under 43 USC § 299 or 30 USC § 54. ORCP 18(A). Although plaintiffs' counsel argued at the summary judgment hearing that they were entitled to damages under federal regulations, ORCP 47(C) requires the court to consider only pleadings, depositions and admissions on file and to render summary judgment only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Plaintiffs' complaint, coupled with defendant's answer, motion for summary judgment and affidavit, did not raise any issue of material fact. Rather, the only issue properly before the court was a matter of law: whether the county ordinances impermissibly conflict with federal regulations of reserved mining rights under the Stock Raising Homestead Act.

---

[6] Following the summary judgment, plaintiffs moved to dismiss defendant's affirmative defense on the same grounds raised on appeal. The trial court properly denied that motion, concluding that allowance of summary judgment in defendant's favor mooted plaintiffs' motion.

Under the Act,[7] a patentee is granted not more than 640 acres of unoccupied public land that has been designated by the Secretary of Interior as chiefly valuable for grazing and raising forage crops and that does not contain merchantable timber and that is not susceptible of irrigation from any known source of water supply. 43 USC § 292 (1970), *repealed* § 702, Pub L No. 94-579, 90 Stat 2787 (1976).

■ ■ Congress further provided, however, that a mineral claimant has the legal right *at all times* to enter onto a patentee's land to prospect for, mine and remove minerals, subject only to a statutory duty not to damage crops, permanent improvements or the value of the land for grazing. 43 USC § 299; 30 USC § 54. By separating the surface estate from the mineral estate and reserving the right at all times to enter the land to prospect and mine for mineral deposits, a servitude is laid on the surface estate for the benefit of the mineral estates. *Kinney-Coastal Oil Co. v. Kieffer,* 277 US 488, 504, 48 S Ct 580, 72 L Ed 961 (1928); *United States v. Union Oil Co. of California,* 549 F2d 1277 (9th Cir 1977). Thus, "[t]he entire thrust of the surface entry [act] is to provide a means for access to these public minerals *which is not subject to denial."* (Emphasis added.) 10 Land and Water Law Review 1, 52 (1975); *see* 1 American Law of Mining §§ 3.23 - 3.32. Moreover, Congress clearly recognized the mineral claimant's right to remove minerals by strip mining methods from land patented under the Act. 30 USC § 54; 1 American Law of Mining § 3.51A.

■ ■ Although we held in *State ex rel Cox v. Hibbard,* 31 Or App 269, 274, 570 P2d 1190 (1977), that federal mining laws were not intended to pre-empt state regulation, the Grant County ordinances at issue here do not simply supplement federal mining law, as did the state regulations in *Hibbard.* Rather, they completely prohibit a mineral claimant from conducting any surface mining on patented land. *See Ventura v. Gulf Oil Corp.,* 601 F2d 1080 (9th Cir 1979), *aff'd* 445 US 947 (1980). As the Supreme Court

---

[7] *See generally, United States v. Union Oil Co. of California,* 549 F2d 1271 (9th Cir 1977), for the legislative history of the Stock Raising Homestead Act of 1916.

stated in *Florida Lime & Avocado Growers, Inc. v. Paul,* 373 US 132, 142-43, 83 S Ct 1210, 1217, 10 L Ed 2d 248 (1963):

> "A holding of federal exclusion of state law is inescapable and requires no inquiry into congressional design where compliance with both federal and state regulations is a physical impossibility * * *."

Moreover, it is well settled that Congress may enact legislation over federal land pursuant to the Property Clause, US Const, Art IV, § 3, cl 2. In *Kleppe v. New Mexico,* 426 US 529, 543, 96 S Ct 2285, 49 L Ed 2d 34 (1976), the Supreme Court stated:

> "* * * Absent consent or cession a State undoubtedly retains jurisdiction over federal lands within its territory, but Congress equally surely retains the power to enact legislation respecting those lands pursuant to the Property Clause. * * * And when Congress so acts, the federal legislation necessarily overrides conflicting state laws under the Supremacy Clause. * * *" (Citations Omitted.)

Accordingly, Grant County cannot prohibit conduct which Congress has specifically authorized. That is the meaning of the Supremacy Clause. US Const., Art VI.

■ ■  Plaintiffs contend that Grant County may prohibit mining under either ordinance, because a mining claim which has been located is no longer a part of the public domain and under *Lane County v. Bessett,* 46 Or App 319, 328-29, 612 P2d 297, *rev den* 290 Or 1 (1980), is subject to local planning and control. Although in *Lane County v. Bessett, supra,* we concluded that a county may zone all federal property within its borders, a county may not compulsorily enforce that zoning unless the property is transferred to a private party. Contrary to plaintiffs' contention, the location of mining claims does not confer fee title to the mineral estate. The owner of a mining claim has "the exclusive right of possession and enjoyment of all the surface included within the lines of * * * location," 30 USC § 26 (1976); however, fee title passes only on issuance of a patent without a reservation. *Best v. Humbolt Placer Mining Co.,* 371 US 334, 336, 83 S Ct 379, 9 L Ed 2d 350 (1963); *Freese v. United States,* 639 F2d 754, 755 (Ct Cl 1981). Thus, because fee title to the mineral estate in plaintiffs' patented land is in the United States *and*

Congress has specifically authorized mineral claimants to enter lands patented under the Stock Raising Homestead Act for the purpose of mining and removing valuable mineral deposits, Grant County cannot prohibit that action by its ordinances. To hold otherwise " * * * would place the public domain of the United States completely at the mercy of state legislation." *Kleppe v. New Mexico, supra,* 426 US at 543, citing *Camfield v. United States,* 167 US 518, 526, 17 S Ct 864, 42 L Ed 260 (1897).

Affirmed.