Argued and submitted May 16, reversed and remanded with instructions
November 12, 1986, City of Portland's reconsideration, Port. Metro. Area LGBC's
reconsideration and League of Oregon Cities' *amicus curiae* memorandum in support
of reconsideration allowed February 11, 1987
See 83 Or App 552, 733 P2d 451 (1987)
Both petitions for review allowed April 22, 1987 (303 Or 331)

# MID-COUNTY FUTURE
## ALTERNATIVES COMMITTEE et al,
### *Petitioners,*

*v.*

# PORTLAND METROPOLITAN AREA LOCAL
## GOVERNMENT BOUNDARY COMMISSION et al,
### *Respondents.*

(2077, 2078, 2086, 2087;
CA A36033 (control), A36034, A36035, A36036)

728 P2d 63

Gregory W. Byrne, Portland, argued the cause for petitioners. On the brief was George E. Birnie, Portland.

Jeffrey L. Rogers, Portland, argued the cause for respondent City of Portland. With him on the brief were Kathryn Beaumont Imperati, Chief Deputy City Attorney, and Ruth Spetter, Deputy City Attorney, Portland.

Dave Frohnmayer, Attorney General, James E. Mountain, Jr., Solicitor General, Virginia L. Linder, Assistant Solicitor General, and Michael B. Huston, Assistant Attorney General, Salem, filed the brief for respondent Metropolitan Area Local Government Boundary Commission.

Timothy J. Sercombe, Matthew R. Baines and Fred R. Neal, III, filed a brief *amicus curiae* for League of Oregon Cities.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

BUTTLER, P. J.

## BUTTLER, P. J.

Petitioners seek judicial review of four orders of the Portland Metropolitan Area Local Government Boundary Commission approving proposed annexations to the City of Portland of approximately 450 acres of contiguous land east of the present city boundary. The annexations were initiated by the city under ORS 199.490(2),[1] the so-called "triple majority" rule, pursuant to which the city received the written consent to annex their land in writing from more than half of the land owners in the territory proposed to be annexed, who also owned more than half of the land in the territory representing more than half of the assessed value of all real property in the territory. Following public hearings, the city council adopted resolutions approving the annexations, and the boundary

---

[1] ORS 199.490 provides, in part:

"(1) A proceeding for a minor boundary change other than a transfer of territory may be initiated:

"(a) By resolution of the governing body of the affected city or district;

"(b) By petition signed by 10 percent of the electors registered in the affected territory;

"(c) By petition signed by the owners of at least one-half the land area in the affected territory; or

"(d) By resolution of a boundary commission having jurisdiction of the affected territory.

"(2)(a) An annexation proceeding may also be initiated by a resolution adopted by the governing body of the affected city or district upon receiving consent to annex their land in writing from more than half of the owners of land in the territory proposed to be annexed, who also own more than half of the land in the territory proposed to be annexed and of real property therein representing more than half of the assessed value of all real property in the territory proposed to be annexed.

"(b) For the purpose of this subsection, consent need not be obtained for any land in a public way included within or contiguous to the territory proposed to be annexed. However, land in such a public way shall, as determined by the commission, be considered annexed to the affected city or district if the minor boundary change is approved, regardless of the land's ownership, size or assessed valuation.

"(c) For the purpose of this subsection, consent need not be obtained for any real property that is publicly owned, is the right of way for a public utility or railroad or is exempt from ad valorem taxation unless the owner of such property files a statement consenting to or opposing annexation with the legislative body of the annexing city or district on or before the date the city or district adopts the resolution required by paragraph (a) of subsection (2) of this section.

"(d) As used in this subsection, 'owner' has the additional meaning given that term in ORS 222.120(7)."

commission also approved them. Those orders are subject to judicial review under ORS 183.482. ORS 199.461(4).

The Mid-County Future Alternatives Committee and two residents of the territory are opposed to the annexations and ask that we vacate the boundary commission's decisions, contending that the "triple majority" annexation procedure authorized by ORS 199.490(2) violates the Privileges and Immunities Clause of the Oregon Constitution, Article I, section 20, and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.[2] In the alternative, they contend that the consent process as conducted did not comply with ORS 199.490(2). Because resolution of the case would not be complete without resolving the state constitutional ground, and because we reverse on that ground, we do not reach petitioners' alternate contentions.

The boundary commission is responsible ultimately for approving or disapproving city annexations; its decision to approve the type of "minor boundary change" involved here, however, is subject to approval of the electors in all but one circumstance. First, when a city council initiates an annexation by resolution pursuant to ORS 199.490(1)(a), if there are the requisite number of written objections, a boundary commission order approving the annexation is subject to the approval of the electors in the territory. ORS 199.505(1) and (2).[3] Second, if a city receives the consent of the "triple

---

[2] Or Const, Art I, § 20, provides:

"No law shall be passed granting to any citizen or class of citizens privileges, or immunities, which, upon the same terms, shall not equally belong to all citizens."

US Const, Amend XIV, § 1, provides, in part:

"No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

[3] ORS 199.505(1) and (2) provide:

"(1) If the boundary commission by its final order approves a minor boundary change other than a transfer of territory, the change shall take effect at the time specified in the final order, but the effective date shall not be less than 45 days, nor more than one year, after the date the commission adopts the final order approving the change. If no effective date is specified in the final order, the order shall take effect 45 days after the commission adopts the final order approving the change. However, the change shall not take effect unless it is also approved by the

majority" of the landowners in the territory, it may pass a resolution to annex, and an order of the boundary commission approving annexation is final and not subject to an election, regardless of whether objections are filed. ORS 199.495.[4] *Rivergate Residents Assn. v. Portland Metro Area,* 70 Or App 205, 208-211, 689 P2d 326 (1984), *rev den* 298 Or 553 (1985).

In addition, the annexation process may be initiated by a petition to the boundary commission signed by 10 percent of the electors registered in the affected territory, by a petition of the owners of at least one-half of the land area in the affected territory or by resolution of the boundary commission itself. Under each of those procedures, the electors of the affected territory are entitled to vote if the boundary commission approves the annexation, if the requisite number of objections are filed. ORS 199.505. If there is a health hazard or if the territory to be annexed is surrounded by a city, different

---

electors if within 45 days after the date of the adoption of the order:

"(a) Written objections to the change signed by not less than 10 percent or 100, whichever number is the lesser, of the electors in the affected territory are filed with the commission; or

"(b) A resolution objecting to the change adopted by the city council of the affected city or district board of the affected district is filed with the commission.

"(2) If objections as required by this section are filed by a city council or district board, the council or board shall call and hold an election in the affected city or district on the boundary change as approved. If objections are filed by the electors, the commission shall certify the fact of the objections to:

"(a) The city council or district board of the affected city or district, if the change involves a withdrawal of territory, whereupon the council or board shall call an election in the city or district.

"(b) The county board of the county where the territory is located, if the change involves an annexation, whereupon the board shall call an election in the territory. Where a minor boundary change has been initiated pursuant to ORS 199.490(1)(a), cost of an election required by this paragraph shall be paid by the city or district to which the territory is proposed to be annexed."

[4] ORS 199.495 provides:

"In a proceeding initiated as provided by ORS 199.490(2) and (5):

"(1) If the proposed annexation is approved by the commission, the final order shall be effective at the time specified in the final order except that the effective date shall not be more than one year after the date the final order is adopted. If no effective date is specified in the final order, the order shall take effect on the date the order is adopted. The order shall not be subject to ORS 199.505.

"(2) ORS 222.883 to 222.896, 222.900(1) and (3) and 222.915 do not apply to proceedings initiated by the findings of the Assistant Director for Health."

procedures may be invoked that require neither the consent of landowners nor an election. *See* ORS 222.880; ORS 222.750. Those procedures, involving special circumstances that are not classified as "minor boundary changes," are not relevant here.

When the boundary commission receives a resolution or petition for annexation, it is required to cause a study of the proposal to be made and to conduct one or more public hearings before approving, modifying or disapproving the proposal. ORS 199.461; ORS 199.463. Any interested person may seek judicial review of the commission's order. ORS 199.461(4).

The premise of petitioners' state constitutional claim is that the "triple majority" annexation procedure treats landowners who need not and may not be resident electors differently from nonlandowners who are resident electors, in that it permits landowners to give or withhold their consent to an annexation but grants no similar privilege to residents who are not landowners.

■ In reviewing the claim under the Oregon Constitution, the first inquiry is whether a landowner's ability to give or withhold consent for the annexation of his own land is a substantial enough advantage to be considered a "privilege." The city contends that the consent process confers no privilege on landowners, because it has no binding effect. It is true, as amicus points out, that the filing of the consents does not *require* the city to proceed under ORS 199.490(2). It may bypass the consent and proceed with annexation under ORS 199.490(1), or it may choose not to proceed with annexation at all. However, it is only the consent of the "triple majority" of the *landowners* that enables the city to proceed with annexation without an election. Without the "triple majority," there must be an election if the requisite number of written objections are filed; there is no discretion.

As we stated in *Peterson v. Portland Metropolitan Boundary Comm.,* 21 Or App 420, 535 P2d 577 (1975), the "triple majority" provision was enacted as an alternative to an election. It insulates annexation proposals from a vote of the residents in the territory to be annexed. *Rivergate Residents Assn. v. Portland Metro Area, supra.* Although the "triple majority" procedure does not enable landowners, as a distinct

class, to initiate, vote on or veto an annexation, the landowners' consent is "binding" in the sense that it enables the city to choose to proceed with annexation without the approval of the electors. It is essential in determining that the electors will not be entitled to an election, even if the requisite number of them object timely. The advantage to landowners who avail themselves of the "triple majority" procedure is that they may achieve annexation of all of the property in the territory proposed to be annexed under circumstances in which a majority of the electors in the territory oppose the annexation. That advantage is substantial enough to be treated as a "privilege" under the Oregon Constitution.

■     The city urges that, when the "triple majority" provision is viewed in the context of the various methods of annexation, it becomes apparent that the provision does not grant to landowners any privilege not granted to nonlandowners on equal terms. However, as we view the statutory scheme, it is only when we examine all of the methods of accomplishing "minor boundary changes" that the true one-sidedness of the "triple majority" process becomes apparent. Although landowners and nonlandowner electors alike have the right to petition the boundary commission directly for annexation, ORS 199.490(1)(b) and (c), the consent process goes a step beyond. It permits a "triple majority" of the landowners, regardless of whether they are electors registered in, or even residing in, the territory to be annexed, to decide in favor of annexation, submit their consents to the governing body and thereby foreclose the election process if the proposed annexation is approved. No similar privilege is accorded to electors who are not landowners. The state's justification for denying that privilege to nonlandowners is, presumably, its interest in eliminating the administrative burden of an election "where consent procedures had already established that annexation was the clear will of the property owners in the affected territory." *Peterson v. Portland Metropolitan Boundary Comm., supra,* 21 Or App at 429. Applying the "balancing" test described in *Olsen v. State ex rel Johnson,* 276 Or 9, 19, 554 P2d 139 (1976); *see also Planned Parenthood Assn. v. Dept. of Human Res.,* 63 Or App 41, 56, 663 P2d 1247 (1983), *aff'd* 297 Or 562, 687 P2d 785 (1984), we conclude that that justification is not sufficient when it is weighed against the privilege to vote in a matter of general concern to electors

registered in the territory to be annexed and that the "triple majority" provision violates Article I, section 20, of the Oregon Constitution.

Our reasoning is supported by the analysis under the federal Equal Protection Clause. There is no federal constitutional right to vote on annexation matters; the fixing of municipal boundaries is a state legislative function, *Hunter v. City of Pittsburgh*, 207 US 161, 178, 28 S Ct 40, 52 L Ed 151 (1907), and we assume, without deciding, that the Oregon Constitution confers no greater right. However, once the legislature creates a right to vote on an annexation matter, it may not restrict that right on grounds other than age or residence without a showing that the restriction furthers a "compelling state interest." *Hill v. Stone*, 421 US 289, 95 S Ct 1637, 44 L Ed 2d 172 (1975).

As respondents have noted, courts have approved statutory schemes containing alternate methods of annexation, some of which provide for election and some of which do not. *Carlyn v. City of Akron*, 726 F2d 287 (6th Cir 1984); *Adams v. City of Colorado Springs*, 308 F Supp 1397 (D Colo), *aff'd* 399 US 901, 90 S Ct 2197, 26 L Ed 2d 555 (1970); *Weber v. City Council of Thousand Oaks*, 9 Cal 3d 950, 109 Cal Rptr 553, 513 P2d 601 (1973). However, no cases are cited, and we have found none, that have upheld a statutory scheme that provides that a binding election can be foreclosed by the voice of the landowners in the territory.

The cases involving the right to *petition* for annexation are distinguishable. *Berry v. Bourne*, 588 F2d 422, 424-25 (4th Cir 1978); *Goodyear Farms v. City of Avondale*, 148 Ariz 216, 714 P2d 386 (1986); *Doenges v. City of Salt Lake City*, 614 P2d 1237 (Utah 1980). They hold that the right to petition for annexation is not analogous to the right to vote and that unequal treatment in that context need only be rationally explained. *Goodyear Farms v. City of Avondale, supra.* In each case, a government body was ultimately responsible for determining whether the city would or would not annex the territory. The petitioners had been given no final say in the outcome of the annexation and had no right to vote on the final decision of the governing body.

Here, similarly, the consent process does not require the city or the boundary commission to take any action.

However, the consent process affects the resident electors' right to cast a *final and binding* vote on the boundary commission's decision if it approves the proposed annexation. In fact, the *only* effect of the consent process is to foreclose all of the resident electors in the affected territory from voting on an annexation proposal ultimately submitted by the city to the boundary commission and approved by the latter. The "triple majority" process enables landowners to "veto," in advance, the electors' possible rejection of annexation. Because the landowners, under the "triple majority," have expressed their approval, a majority of the electorate in the territory affected will never have the opportunity to cast its in opposition.

In *Seattle v. State,* 103 Wash 2d 663, 694 P2d 641 (1985), the statute under consideration provided that annexation decisions of the boundary commission were subject to vote; however, the right to vote could be blocked by the filing of a petition by 75 percent of the landowners in the affected area. The court reasoned that, although many statutory schemes giving property owners greater say in annexation matters have been upheld, when the final decision is made by election different considerations apply. The court stated that, once the state has chosen to submit an annexation question to a vote,

> "[t]he State may not restrict the vote to property owners either directly, through limitations on the right to vote, or indirectly, by giving a particular class the power to prevent an election." 103 Wash 2d at 673.

*See also Hayward v. Clay,* 573 F2d 187 (4th Cir), *cert den* 439 US 959 (1978); *Curtis v. Board of Supervisors,* 7 Cal 3d 942, 104 Cal Rptr 297, 501 P2d 537 (1972); *Levinsohn v. City of San Rafael,* 40 Cal App 3d 656, 115 Cal Rptr 309 (1974). The Washington case was decided under the Washington and federal constitutions. The same reasoning and result should obtain here.

Accordingly, we hold that the "triple majority" provision grants to landowners in the affected territory a privilege not granted to nonlandowners residing in the territory, the justification for which is outweighed by the detriment to nonlandowners that the classification creates. ORS 199.490(2) violates Article I, section 20, of the Oregon Constitution; it is, however, severable from the remainder of the statute.

Reversed and remanded with instructions to set aside the orders.