Argued and submitted June 12, reversed and remanded October 21, 1987, reconsideration denied January 29, petition for review denied March 29, 1988 (305 Or 433)

## VAN DAAM et al,
*Appellants,*

*v.*

## HEGSTROM et al,
*Respondents.*

(85-2146; CA A40742)

744 P2d 269

Julie H. McFarlane, Juvenile Rights Project, Inc., Portland, argued the cause for appellants. With her on the briefs was Susan I. Buckles, Oregon Legal Services Corp., Hillsboro.

Philip Schradle, Assistant Attorney General, Salem, argued the cause for resondents. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

WARREN, J.

Rossman, J., concurring in part; dissenting in part.

## WARREN, J.

Plaintiffs in this class action are parents of children who have been found to be within the jurisdiction of the juvenile court because they committed acts which, if committed by an adult, would have been violations of criminal law, ORS 419.476(1)(a), and who have been committed to a secure training school or to a temporary work and training camp.[1] The state has sought to enforce plaintiffs' statutory obligation to support their children, ORS 109.010, by charging them for the care of the children while they are in secure custody. Defendants are the administrators of the state agencies involved in caring for the children and in enforcing the support obligation. Plaintiffs seek a declaration that the policy of charging for the support of children in secure custody violates various state and federal constitutional provisions and an injunction requiring defendants to stop the practice and to refund money already collected. The trial court granted summary judgment for defendants and dismissed the case. We hold that one apparent feature of the state's present program violates the state constitution.

When a juvenile court judge commits a child to secure custody but does not enter a support order under ORS 419.513, the Support Enforcement Division of the Department of Justice determines the amount which the parents should pay for the child's maintenance and issues an appropriate order. *See* ORS 416.400 to ORS 416.470. The amount of the order is based on the parents' ability to pay, but in no case is it greater than the maximum charged parents of children who are in foster care. That maximum is equal to the amount which the state pays foster parents for the care of foster children and is considerably less than the actual cost of supporting the child in secure custody, exclusive of education, security personnel and capital outlays.[2]

Defendants assert that the parents' liability is derived from their general duty, codified in ORS 109.010, to support their minor children, and that ORS 416.400 to ORS

---

[1] We refer hereafter to these facilities as "secure custody."

[2] The state formerly charged parents the full cost of supporting a child in secure custody. Our decision is predicated on its present practice of charging parents of institutionalized children on the same basis as those of children in foster care.

416.470 establishes the procedure for enforcing that duty.[3] Plaintiffs make a number of attacks on the constitutionality of requiring them to fulfill their obligation to support their dependent children while those children are in secure custody. Most of the arguments do not merit discussion. Some are based on defendants' former policy of charging the full cost of institutional care; others, such as the claim that defendants' present policy is a bill of attainder or works a corruption of blood and forfeiture of estate, are patently frivolous. The only arguments worth discussing are that the practice violates the equal privileges and immunities provisions of Article I, section 20,[4] of the Oregon Constitution and the Equal Protection Clause of the Fourteenth Amendment. We turn first to the state constitution.

Article I, section 20, prohibits the state from granting to any person or class of persons privileges or immunities which are not available to all on the same terms. It is directed against state favoritism. *State v. Clark,* 291 Or 231, 236-237, 630 P2d 810, *cert den sub nom Clark v. Oregon,* 454 US 1084 (1981). Plaintiffs do not assert that the state has discriminated against them as individuals or that it administers the challenged policy so haphazardly as to be tantamount to discrimination. *See City of Salem v. Bruner,* 299 Or 262, 269-270, 702 P2d 70 (1985); *State v. Freeland,* 295 Or 367, 667 P2d 509 (1983); *State v. Clark, supra.* Rather, they attack the state's enforcement of the support obligations of the *class* of parents of children committed to secure custody by juvenile court order. In order to succeed, they must show that there is another group which is granted a privilege or immunity which their group is not granted and that the distinction between the classes is either impermissibly based on persons' immutable characteristics, *see State ex rel Adult & Fam. Ser. v. Bradley,* 295 Or 216, 666 P2d 249 (1983); *Hewitt v. SAIF,* 294 Or 33, 653 P2d 970 (1982), or has no rational foundation in the light of the state's purpose. *See Mid-County Future Alt. v. Port. Metro. Area LGBC,* 82 Or App 193, 199-200, 728 P2d 63 (1986),

---

[3] Plaintiffs do not question the statutory authorization for charging them for the support of children in secure custody.

[4] Article I, section 20:

"No law shall be passed granting to any citizen or class of citizens privileges, or immunities, which, upon the same terms, shall not equally belong to all citizens."

*rev dismissed* 304 Or 89, 742 P2d 47 (1987); *Baillie v. State Board of Higher Educ.,* 79 Or App 705, 708-709, 719 P2d 1330 (1986).[5]

■        We have some difficulty in determining exactly what plaintiffs believe is the improper classification under the state constitution. Their arguments generally ignore both the statutory obligation of parents to support a dependent child and the ability of the juvenile court under ORS 419.513 to enforce that obligation by a direct order. They also fail to recognize that parents with children in foster care must pay child support and that defendants seek to collect only what plaintiffs would owe if their children were in foster care. It is thus difficult to understand plaintiffs' argument that the state is levying a special tax on them to support institutions which have public rather than private functions.[6] With one exception, plaintiffs simply do not compare themselves to other classes which they allege receive greater privileges or immunities than they do. Without that, they do not state an Article I, section 20, claim of improper classification.

Plaintiffs' one compelling objection, raised generally in their complaint and specifically, though cryptically, in their trial memorandum, is that defendants do not attempt to recover support from parents of children who were convicted of a crime in adult court after a remand from juvenile court but who are then placed in juvenile, rather than adult, secure custody.[7] *See* ORS 419.533. Those children may be as young as 15; although they have been convicted of crimes, they are

---

[5] A class which was created by the very statute under attack and which is not otherwise identifiable as a separate class is not a class for Article I, section 20, purposes. *Wilson v. Dept. of Rev.,* 302 Or 128, 131-132, 727 P2d 614 (1986); *State v. Freeland, supra,* 295 Or at 375 n 7.

[6] Other arguments, such as those concerning the costs of maintaining homes to which their children can return after leaving custody or the cost of travelling to visit the children while they are in state institutions, raise issues which are properly for legislative or administrative, not judicial, consideration.

[7] After oral argument, defendants received permission to supplement the record with two affidavits which suggest that they in fact do collect support payments from parents of children remanded to adult court on the same basis as from parents of children committed to secure custody by a juvenile court. Those affidavits were not before the trial court. Thus, at the time summary judgment was granted, an issue of fact as to that question existed and summary judgment was improper. Plaintiffs have not had an opportunity to submit material on that point. This is a matter which the parties can resolve in the trial court on remand.

otherwise indistinguishable from children placed in secure custody by direct juvenile court action. Both groups live under the same conditions and receive the same treatment. The only difference is that remanded children may be transferred to an adult institution after they turn 18.

If the state does not require parents of unemancipated remanded children to support their children while they are in secure custody, it has provided those parents an immunity not provided to members of plaintiffs' class. The distinction between parents of remanded children and parents of nonremanded children exists independently of the statutes which plaintiffs challenge. The two classes are thus subject to Article I, section 20, scrutiny. We cannot find any rational basis for the distinction in either the state's penological purposes or its interest in enforcing the parents' duty of support. The state does not suggest any rational basis for it. We hold that, if plaintiffs' claim is proven, defendants have violated Article I, section 20, by giving parents of remanded children an immunity which is not available to parents of nonremanded children.

■        Plaintiffs also argue that defendant's policy violates federal equal protection requirements. We need not consider the federal constitutional validity of the distinction which we hold violates Article I, section 20; we perceive no other potential violation of the Fourteenth Amendment. Contrary to plaintiffs' position, there are no suspect classifications; assuming that maintaining the family unit is a fundamental right, the challenged policy does not impair it other than as a necessary consequence of implementing unchallenged juvenile court jurisdiction over the children. There is a clear governmental interest in enforcing a parent's support obligation, and defendants do not seek to collect more than the amount of that obligation. Plaintiffs rely heavily on *In re Jerald C.,* 36 Cal 3d 1, 678 P2d 917, 201 Cal Rptr 342 (1986), but neither the plurality nor the concurring opinion in that case convinces us that there is any federal impropriety in Oregon's statutory scheme or in defendants' actions. We therefore reject plaintiffs' federal arguments.

Reversed and remanded for further proceedings not inconsistent with this opinion.

**ROSSMAN, J.,** concurring in part; dissenting in part.

I concur with that portion of the majority opinion dismissing most of plaintiffs' claims. I dissent from the majority's holding that state collection of support money from the parents of certain minors in secure custody but not from others would violate the privileges and immunities clause of Article I, section 20.

To begin with, I do not believe that the issue is before the court. It appears to me that the majority has seized on a simple assertion in plaintiffs' memoranda to build a case where none exists. The majority opinion turns on the *factual* statement in plaintiffs' memoranda that the state collects support money from parents of minors placed in secure custody by the juvenile court but fails to collect from the parents of minors remanded to secure custody by the adult corrections system. Plaintiffs first made this assertion in their memorandum in support of their motion for summary judgment:

> "The defendants' practice violates equal protection for a reason independent of its requiring payment from individuals for a state function: the practice distinguishes between two classes of parents of minors found to have engaged in criminal conduct and, with no logical basis, imposes financial liability on one class alone.

> "ORS 419.533 provides that children 15 and over, who are alleged to have committed a 'criminal offense' may be remanded to adult court for disposition as an adult. ORS 137.124(4) requires that all remanded juveniles under 18 years of age who have been sentenced to a term of imprisonment in the custody of the Corrections Division shall be transferred to a juvenile training school for physical custody.

> "Thus, juveniles convicted in adult court and incarcerated in the secure training schools under ORS 137.124(4) are in virtually the same situation as juveniles committed to the secure training schools as a result of being convicted of a crime in a juvenile court. The state, however, treats their parents differently for the purposes of reimbursement; this unequal treatment violates a parent's right to equal protection of the laws. Parents of remanded juveniles, just like relatives of adult prisoners, are not charged for the costs of the child's confinement."

It is not clear whether plaintiffs meant that this disparate treatment is what the state does in fact or that it is what the statutes require the state to do. The majority treats it as a factual statement. One must be mindful that this case comes to us on a summary judgment. Plaintiffs submitted no pleadings, depositions, affidavits or other material in the record to support the quoted statement. The complaint contains only the bare assertion that "[d]efendants, by charging plaintiffs for the incarceration of their children committed to the secure training schools violated the plaintiffs' rights to due process and equal protection * * *." Plaintiffs repeated the statement at oral argument below and in their briefs to this court. The state did not contend that there were no material facts in dispute. The state never addressed this factual issue until argument before this court, where it contended that, as a matter of fact, the state does not discriminate in seeking support.

ORCP 47C provides:

"The judgment sought shall be rendered forthwith if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

In *Elliot v. Oregon International Mining Co.*, 60 Or App 474, 654 P2d 663 (1982), the parties opposing summary judgment failed to allege sufficient facts in their pleading to bring themselves within the purview of a particular statute but attempted to allege such facts at oral argument on the motion for summary judgment. We held:

"Although plaintiffs' counsel argued at the summary judgment hearing that they were entitled to damages under federal regulations, ORCP 47C requires the court to consider only pleadings, depositions, and admissions on file * * *." 60 Or App at 479.

In *Falkenstein v. Pishioneri*, 80 Or App 203, 720 P2d 1341 (1986), we rejected examination of material outside the ORCP 47C list in evaluating a summary judgment:

"The parties agreed that there was no issue of material fact, but we disagree. We do not rely on what may or may not be admitted in the briefs on appeal in determining the propriety of summary judgment but only the pleadings, depositions,

affidavits and admissions on file and considered by the trial court." 80 Or App at 206.

Applying those holdings and the language of the rule, I would hold that, by merely stating the particular discriminatory practice of the state *in their brief alone,* plaintiffs could not assert the claim on a summary judgment, and it is not before this court.[1]

A statement in a brief is not sufficient to raise a genuine issue of material fact:

"In deciding whether a genuine issue of fact exists, courts generally read 'genuine issue' to mean 'triable issue.' Before a party has a triable issue, he or she must have sufficient evidence to be entitled to a jury determination." *Seeborg v. General Motors Corporation,* 284 Or 695, 700, 588 P2d 1100 (1978).

Neither is a statement in plaintiffs' memoranda competent evidence on which we could decide this case.

On the other hand, if plaintiffs intended to assert that the state is required by law to treat certain minors in secure custody differently, they are wrong. In their brief before this court, they cite the statutes cited above as support for their statement, which tell us only that some minors are committed to secure custody by juvenile courts and that others are placed by adult courts.

Plaintiffs also rely on the CSD Service Administration Manual VIII-A-1-III-C, which provides:

"C. Cases which require mandatory referral to SED are the following, where placement is expected to last more than 30 days:

"1. All children in paid residential substitute care programs (includes Parole Substitute Care and Independent Living), in Children's Services Division's custody pursuant either to a court order or voluntary agreement.

"2. All children *committed* to the training schools and residing at Hillcrest, MacLaren, or the camps." (Emphasis supplied.)

---

[1] Although the state submitted a cross motion for summary judgment, which was granted in its entirety, that does not mean that the state conceded that there were no issues of fact as to plaintiffs' theory of the case. *McKee v. Gilbert,* 62 Or App 310, 661 P2d 97 (1983).

They argue that the use of the term "committed" means the manual section applies only to adult court minors who are "committed" by statute to the Corrections Division, which transfers "only the physical custody and not the commitment of the person to the juvenile training schools." However, the cited manual section does not refer to the statute or otherwise define "committed," so that term could simply refer to transfer of physical custody. In any case, the provision is consistent with an agency policy to seek support from parents of adult court minors.

Finally, plaintiffs state that "well settled principles of law" support their factual statement. They are apparently referring to a general rule that family members are not required to provide support for other family members who are in prisons. However, they did not cite, nor can I find, any authority for the proposition that the state does not or cannot seek support from the parents of adult court minors. The statutes cited by plaintiffs only state the obvious: Some minors in secure custody are placed there by the juvenile court system and some are placed by the adult court system. The manual citation also tells us nothing. The question comes down to: "What is the policy and practice of the state?" There is no competent evidence in the record to raise that as an issue and, therefore, this court cannot decide the merits.

Were I to reach the merits, I would uphold the purported practice of the state. I agree with the majority that the ultimate issue is whether there is a rational basis for distinguishing between the parents of minors placed in secure custody by juvenile court and parents of minors placed in secure custody by adult criminal court. However, I would hold that there is a rational basis for such a distinction.

The basis for the distinction flows from the simple fact that some minors have been placed in secure custody by the adult system, and some have been placed by the juvenile system. The underlying purposes of confinement under the two systems reflect different state policies. The policies behind the exercise of jurisdiction under the juvenile adjudication system are stated in ORS 419.474:

"The provisions of ORS 419.472 to 419.597, 419.800 to 419.839 shall be liberally construed to the end that a child coming within the jurisdiction of the court may receive such

care, guidance, and control, preferably in the child's own home, as will lead to the child's welfare and the best interest of the public, and that when a child is removed from the control of the parents of the child the court may secure for the child care that best meets the needs of the child."

Minors committed to secure custody by that system are found to be within the custody of the juvenile court on the basis of a finding of delinquency. ORS 419.509. However, "an adjudication by a juvenile court that a child is within its jurisdiction is not a conviction of a crime or offense." ORS 419.543.

The situation of minors convicted as adult criminals is quite different. Obviously, they are convicted of a crime. In addition, to remand a minor to adult court, the juvenile court must make findings on a variety of criteria, including whether the minor is age 15 or over, that the alleged offense is either a Class A or B felony, murder, or certain class C felonies, including assault and robbery in the third degree, and the protection of the community. ORS 419.533(1).

Further evidence of the difference in state policy toward minors convicted of crimes in adult court is that emancipated minors are to be tried for crimes as if they were adults and that the ORS 109.010 duty of support does not apply to their situation. ORS 109.555. In short, the different purposes behind the adult and juvenile systems provide ample support for a holding that a state policy treating minors and their parents under each system differently has a rational basis. *See Jesmer v. Dundon,* 29 NY2d 5, 323 NYS2d 417, 271 NE2d 905 (1971).

Finally, plaintiffs' primary equal protection argument is that to charge parents of minors in secure custody for support, regardless of which court sent them there, and not charge the families of adult criminals (who also have a duty of support under ORS 109.010) violates equal protection. This is because the primary purpose for secure custody of minors and adults is the protection of society. The majority rejects this argument. If it finds no equal protection problem with that, it cannot logically stop halfway and hold that minors incarcerated under the adult system must be treated the same as minors under the juvenile system. If the distinctions between the purposes and practices of the adult system and the juvenile system are valid, as the majority holding implies, then the

results of those distinctions must be constitutionally valid as applied to different treatment of minors in adult court and minors in juvenile court.

Accordingly, I respectfully dissent.