Argued and submitted February 26, affirmed August 29, 1990

Lynn D. MOCCIO,
*Petitioner,*

*v.*

DEPARTMENT OF HUMAN RESOURCES,
ADULT AND FAMILY SERVICES DIVISION,
*Respondent.*

(2-2801-AP5222-9; CA A49591)

796 P2d 1233

Thomas W. Sondag, Portland, argued the cause for petitioner. With him on the briefs was Spears, Lubersky, Bledsoe, Anderson, Young and Hilliard, Portland.

Jas Adams, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

NEWMAN, J.

**NEWMAN, J.**

Claimant appeals from an order of respondent (AFSD) that discontinued Aid to Dependent Children (ADC) to three minor children and denied her application for benefits on behalf of the children. ORS 418.125; ORS 183.415 to ORS 183.470. We affirm.

In its reconsideration order, AFSD found these facts:

"1. For approximately the past two years, [claimant] has lived with John Martin and his three minor children. The oldest child is 11 years old. In March 1988, Mr. Martin was arrested. On March 17, 1988, [claimant] had herself appointed the legal guardian of the children by a Multnomah County Circuit Court judge, with the consent of Mr. Martin. [Claimant] wished to keep the children together and enable them to continue attending the same school. Another purpose of the guardianship was to enable the children to be 'assured access to the benefits due them as minors under the laws of the State of Oregon.' Exhibit A.

"2. [Claimant] is not related to Mr. Martin or his children.

"3. Before his incarceration, Mr. Martin was receiving ADC for himself and his children. On March 16 [claimant] informed Ms. Fraser that Mr. Martin was in jail. [Claimant] thought she could have Mr. Martin's grant continue (for the children), but Ms. Fraser believed it was necessary to close the grant. She did so and advised [claimant] to seek assistance from the Children's Services Division.

"4. On March 16, 1988 Ms. Fraser notified Mr. Martin that his ADC grant would be closed effective March 31 because his children were not living with a caretaker relative. Although Ms. Fraser had been notified before the closure notice was sent that Mr. Martin was in jail, the notice was addressed to his home. [Claimant] read the notice to Mr. Martin over the telephone but neglected to tell him that, as indicated on the back of the notice, he had a right to a hearing if he disagreed with the agency's decision. He did not request a hearing.

"5. On March 25 [claimant] applied for ADC for, and as the guardian of, the Martin children. Her application was denied immediately because she is not a 'caretaker relative,' as the agency defines that term, of the children. [Claimant] requested a hearing on the same day, stating, 'I was denied

ADC for Andrew, Jason, and Marnie Martin because I am not a blood relative.' Exhibit B.

"6. [Claimant] does not know for [how] long Mr. Martin will be in jail. She thinks it might be six to eight weeks, and that he may be released in June.

"7. Oregon Administrative Rule (OAR) 461-05-420 and OAR 461-05-425 were in effect in March and April 1988 but neither rule was included in the agency's Policy Manual. Agency representatives are to use the Manual to ascertain the agency's rules and policy. Because these rules were not in the Manual, Ms. Davis and Ms. Fraser were unaware of their existence until the hearing on April 20.

"8. The three Martin children were born in the United States."

AFSD concluded that the children were eligible to receive ADC benefits only for 60 days on an emergency basis, OAR 461-05-420, and were not eligible for continued assistance, because claimant was not a "caretaker relative" of the children. *See* OAR 461-05-405, OAR 461-05-410 and OAR 461-05-420. AFSD also ruled that denial of benefits was not unconstitutional.

Claimant assigns as error that the agency applied its eligibility provisions in a manner that impermissibly conflicts with federal regulations under the Social Security Act. 45 CFR § 233.90(c)(1)(v) provides:

"(A) A child may be considered to meet the requirement of living with one of the relatives specified in the Act if his home is with a parent * * *.

"(B) A home is the family setting maintained or in the process of being established, as evidenced by assumption and continuation of responsibility for day to day care of the child by the relative with whom the child is living. A home exists so long as the relative exercises responsibility for the care and control of the child, even though either the child or the relative is temporarily absent from the customary family setting."

OAR 461-05-410 provides:

"(1) To be eligible for ADC, a dependent child must live with a caretaker relative.

"(2) The caretaker relative is defined as the person who is responsible for the care, control and supervision of the

dependent child(ren) and who is within the following degree of relationship to the dependent child:

"(a) Natural, adoptive or stepparent;

"(b) Blood relative or half-blood relative, including persons of preceding generations denoted by the prefixes of grand, great or great-great. Children with one common natural parent are half-blood relatives;

"(c) Aunt, uncle, first cousin, nephew or niece;

"(d) Person(s) who legally adopt the child, or relative of the adoptive parent(s) as defined above. A valid decree of adoption establishes the adoptive parent(s) as the natural parent(s) and erases all prior legal and blood relationships;

"(e) Spouse of anyone listed above, even if the marriage has been terminated by death or divorce;

"(f) Stepfather, stepmother, stepbrother or stepsister even after marriage is terminated by death or divorce.

"(3) When the care, control and supervision of the child(ren) is given to, or accepted by, another person for 30 days or more, the status of caretaker relative is negated."

Claimant, as guardian, is not a "caretaker relative."

■ If a state chooses to participate in the federal program for Aid to Families with Dependent Children (AFDC), its eligibility standards cannot be more restrictive than the federal standards. *Pahle v. AFSD,* 72 Or App 606, 610, 696 P2d 1135, *rev den* 299 Or 443 (1985). Claimant argues that the eligibility standards for continued receipt of benefits under OAR 461-05-410 are more restrictive than under 45 CFR § 233.90(c)(1)(v). She asserts that, under the rule, benefits terminate if a caretaker relative transfers the care of dependent children for 30 days or more but that, under the regulation, benefits continue even though the relative is absent more than 30 days, if the absence is temporary and if the relative remains responsible for the children's day-to-day care.

■ Claimant's argument assumes that, even though the children did not meet the eligibility standards of the state rule, they met the eligibility standards of the federal regulation. She asserts that the children's father continued to be responsible for their day-to-day care during his incarceration. As a matter of law, however, claimant became responsible for the children's day-to-day care when the court appointed her their

legal guardian. *See* ORS 126.080(1).[1] Accordingly, the children do not meet the eligibility standards in the regulation. They are also ineligible under the rule. Under these facts, therefore, there is no conflict between the regulation and the rule as applied.

Claimant also assigns error to AFSD's refusal to grant claimant an exception from its rules and to its failure to justify that refusal. OAR 461-02-522 provides:

> "The Administrator of the Division, or his or her designee, upon making a finding that the application of any rule imposes a severe hardship on the applicant or recipient *and* that adherence to a strict interpretation of such rule is contrary to the philosophy or mission of the agency, may make an exception to the rule for the specific situation. Each such situation will be judged independently on its merits." (Emphasis in original.)

Claimant contends that a hardship existed and that AFSD's denial of the exception is contrary to its mission, because it probably would separate the children in different foster home placements. She also argues that AFSD's justification of the denial was inadequate and that it also had to be explained in advance by the agency's administrator or designee.

■ Although AFSD grants hardship exceptions at its discretion, it must explain the denial of an application for an exception so that a reviewing court can determine whether the agency acted arbitrarily or on an *ad hoc* basis. *Green v. Adult and Family Services,* 32 Or App 635, 638, 574 P2d 1148 (1978). AFSD explained that, even though denial of the exception could cause hardship on the children, its refusal to grant an exception was not contrary to its mission to maintain and strengthen traditional family life. 42 USC § 601. It could conclude that a guardian-ward relationship is distinct from the traditional family relationship that the agency is supposed to protect. AFSD's explanation is sufficient to show that its refusal to make an exception is not arbitrary or merely *ad hoc.*

---

[1] ORS 126.080(1) provides, in relevant part:

"A guardian of a minor has the powers and responsibilities of a parent who has not been deprived of custody of the minor and unemancipated child, except that a guardian is not legally obligated to provide from the funds of the guardian for the ward and is not liable to third persons by reason of the parental relationship for acts of the ward."

Moreover, nothing prohibits the hearings officer from explaining a denial of a hardship exception in a reconsideration order.

■    Claimant also assigns as error AFSD's determination that OAR 461-05-410 is not unconstitutional. She asserts that its interpretation of its rule creates two classes of children for ADC purposes: children who live with caretaker relatives and children who do not. The former class may receive ADC benefits; the latter may not. That, she asserts, violates the rights of children in the second class under both Article I, section 20, of the Oregon Constitution and the Equal Protection Clause of the Fourteenth Amendment.[2]

In order to establish a violation of section 20, claimant must first establish that ADC benefits are allocated or denied on the basis of a "true class." *See Jungen v. State of Oregon,* 94 Or App 101, 105, 764 P2d 938 (1988), *rev den* 307 Or 658, *cert den* 493 US ___ (1989), *reh den* 493 US ___ (1990). For purposes of section 20, a class is a group identifiable by virtue of antecedent personal or social characteristics or societal status. *Hale v. Port of Portland,* 308 Or 508, 525, 783 P2d 506 (1989). The division of children into those living with "caretaker relatives" and others reflects a true class. Apart from the rule, some children do live with the group of adults described as "caretaker relatives," whereas others do not. The distinction thus exists independently of the rule.

Claimant must next show that the distinction between classes is either impermissibly based on immutable characteristics of the groups or that it has no rational foundation in the light of the state's purpose. *Van Daam v. Hegstrom,* 88 Or App 40, 43, 744 P2d 269 (1987), *rev den* 305 Or 433 (1988). The class is based on living arrangements, not immutable characteristics, and has a rational foundation. AFSD's mission is to strengthen family life, 42 USC § 601, and the distinction between children who live with caretaker relatives

---

[2] Article I, section 20, provides:

"No law shall be passed granting to any citizen or class of citizens privileges, or immunities, which, upon the same terms, shall not equally belong to all citizens."

The Equal Protection Clause of the Fourteenth Amendment provides:

"No state shall * * * deny to any person within its jurisdiction the equal protection of the laws."

and those who do not is rationally related to that purpose. There is, therefore, no Article I, section 20 violation.

In analyzing an Equal Protection Clause claim, we must determine whether OAR 461-05-410

"operates to the disadvantage of some suspect class or impinges upon a fundamental right explicitly or implicitly protected by the Constitution, thereby requiring strict judicial scrutiny. * * * If not, the [rule] must still be examined to determine whether it rationally furthers some legitimate, articulated state purpose and therefore does not constitute an invidious discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment." *San Antonio School District v. Rodriguez,* 411 US 1, 17, 93 S Ct 1278, 36 L Ed 2d 16 (1973).

The rule does not work to the disadvantage of a suspect class, that is, one characterized by age, gender, color, creed, ethnic background or national origin. Also, it does not impinge upon a fundamental right explicitly or implicitly protected by the United States Constitution. *See Shapiro v. Thompson,* 394 US 618, 89 S Ct 1322, 22 L Ed 2d 600 (1969). We must determine, therefore, whether the rule furthers a legitimate state purpose. The statement in *Curry v. Dempsey,* 701 F2d 580, 584 (6th Cir 1983) concerning the AFDC program is pertinent to OAR 461-05-410:

"In promulgating the AFDC program Congress elected to confront one consequence of poverty—the disintegration of the family—by providing financial assistance to family units consisting of 'dependent children' and their 'relatives' as those terms are defined by the statute and regulation. Certainly this is a rational method of challenging the pressures poverty places upon the family relationship."

Affirmed.