*[271]
 
 THORNTON, J.
 

 Defendants appeal from a decree enjoining them from removing in excess of 50 cubic yards of material in any calendar year from Forest Creek in Jackson County, Oregon, without obtaining a permit from the Director of the Division of State Lands pursuant to ORS 541.615 (l).
 
 [1]
 

 Plaintiffs complaint for mandatory injunction alleged that defendants "removed the top layer of soil in and near Forest Creek by causing a trench to be dug approximately 200 feet long and from 6 to 10 feet wide, which soil was left to form a vertical unstable bank” and sought a decree requiring defendants to restore Forest Creek to its original condition and "[f]or such other relief as may deem to the Court to be reasonable and proper.”
 

 Defendants advance nine assignments of error. The first three assignments all arise out of a trial court order sustaining a demurrer to defendants’ second affirmative defense. Defendants’ second affirmative defense is a federal preemption claim in which it is alleged that "defendants have been and now are the owners of the Gold Dust placer unpatented mining claims Nos. 1 through 8, in Section 31, Township 17 South, Range 3 West, W.M., in the Upper Applegate Mining District, Jackson County, Oregon, subject only to the paramount title of the United States. Said ground was duly and regularly located on public domain land of the United States.” Defendants then invoke the Property Clause of the United States Constitution, Art IV, §3, clause 2,
 
 [2]
 
 the Supremacy
 
 *[272]
 
 Clause of the United States Constitution, Art VI, clause 2, *
 
 [3]
 
 federal mining laws, 30 USC § 21 et seq, and an "Acceptánce by Oregon of Propositions Offered by Congress in Admission Act” approved by the Oregon Legislative Assembly June 3, 1859, and assert the imconstitutionality of ORS 541.605 to 541.695 as applied to federal lands.
 

 By way of background we should state that there are four general kinds of federal jurisdiction over federal lands: exclusive legislative jurisdiction, concurrent legislative jurisdiction, partial legislative jurisdiction and proprietorial legislative jurisdiction.
 
 See,
 
 Report of the Interdepartmental Committee for the Study of Jurisdiction over Federal Areas within the States, Part I, at 15-22 (1956); Public Land Law Review Commission, Federal Legislative Jurisdiction, Study Report No. 1 at 56-58 (1969); Landstrom,
 
 State and Local Regulation of Private Land Using Activities on Federal Lands,
 
 7 Natural Resources Lawyer 77 (1974).
 

 Exclusive, concurrent and partial legislative jurisdiction are dependent on the Jurisdiction Clause, Art I, § 8, clause 17, United States Constitution,
 
 [4]
 
 and
 
 *[273]
 
 specific agreements between the state and federal governments with respect to a particular parcel of land. Since the defendants in this case have not asserted a Jurisdiction Clause claim, have not asserted that the Admission Act of 1859 applies to the land on which they mine their claim
 
 [5]
 
 and have not indicated in this record the nature or extent of the United States’ interest in the land, we assume that interest is proprietorial.
 

 The Supreme Court of Idaho has recently rejected a claim similar to that advanced here, finding no express or implied federal preemption. The defendants in
 
 State ex rel Andrus v. Click,
 
 97 Idaho 791, 554 P2d 969 (1976), like the defendants in this case, asserted that federal preemption of state environmental regulation on federal land based on the Property Clause, the Supremacy Clause and federal mining laws, 30 USC § 21 et seq, prohibited the state from requiring defendants to obtain a permit prior to mining their claim. In rejecting defendants’ preemption claim, the Idaho Supreme Court noted:
 

 " * * * [W]e find nothing in the federal statute or its legislative history to indicate an intent to preempt state regulation. Indeed, the federal statute specifically recognizes the state’s right to impose additional requirements
 
 *[274]
 
 in some areas. For example, even where standards are set for the location of mining claims, nonconflicting state requirements are upheld. 30 U.S.C. § 26; I.C. § 47-601 et seq.
 

 "Nor can the federal statute be characterized as a pervasive regulatory scheme. If anything, the federal statute is characterized by its absence of regulation. Although the Forest Service recently promulgated regulations which purport to give them a greater part in the control of mining operations, 39 Fed. Reg. 31317-21, both these regulations and the statutes authorizing their promulgation specifically recognize the viability of existing state regulations. 16 U.S.C. §§ 551, 551a.
 

 "We also fail to find preemptive qualities in the nature of the subject matter regulated. As stated in
 
 Mendiola v. Graham,
 
 139 Or. 592, 10 P.2d 911, 915 (1932):
 

 " 'It will not be contended that the federal government has not the right to conserve the natural resources of the public domain, and, where the federal government has not acted, the state, through its police power, may exercise such right and privilege. The state, as well as the United States, is vitally interested in preserving the natural resources within its boundaries.’
 

 Indeed, the preservation of the environmental quality of its lands is a subject particularly suited to administration by the states. Congress has recognized that even where extensive federal environmental legislation exists, the primary responsibility for implementing environmental policy rests with state and local governments. 42 U.S.C. § 4371(b) (2);
 
 see also
 
 42 U.S.C. § 4331(a).” 97 Idaho at 798.
 

 We likewise conclude that federal mining laws do not indicate an intent to preempt state regulation and we find no conflict between any particular provision of the federal mining laws and ORS 541.605 to 541.695.
 
 See, Kleppe v. New Mexico,
 
 426 US 529, 96 S Ct 2285, 49 L Ed 2d 34 (1976);
 
 Omaechevarria v. Idaho,
 
 246 US 343, 38 S Ct 323, 62 L Ed 763 (1918); Shapiro,
 
 Energy Development on the Public Domain: Federal/State Cooperation and Conflict Regarding Environmental
 
 
 *[275]
 

 Land Use Control,
 
 9 Natural Resources Lawyer 397 (1976); Berger and Mounce,
 
 Applicability of State Conservation and Other Laws to Indian and Public Lands,
 
 16 Rocky Mt L Inst 347 (1971).
 

 In their fourth and fifth assignments of error, defendants argue that the trial court erred in sustaining plaintiffs demurrer to defendants’ third affirmative defense. Defendants’ third affirmative defense alleges that defendants "entered into a contract with the United States under the mining law of 1872 whereby defendants have the right to enter, locate, make discoveries of valuable mineral deposits and to purchase them from the United States,” and further alleges that "[a]s to water rights, defendants and their predecessors in interest have a contract with the State of Oregon for the right to wash and mine the auriferous alluvials in Forest Creek, which rights have been vested in the defendants and their predecessors in interest by ORS 539.010 and reaffirmed ORS 537.120 and protected by Acts of Congress 30 USC Sections 51 and 52.” Defendants then allege that "[e]ach of the sections of Oregon Revised Statutes invoked by plaintiff is null and void and unconstitutional insofar as any such section impairs the obligation of the contracts aforesaid,” citing Article I, § 10, United States Constitution,
 
 [6]
 
 and Article I, § 21, Oregon Constitution.
 
 [7]
 

 The short answer to defendants’ contention is that, assuming an implied contract arising out of the cited statutes, defendants have failed to allege any conflict between ORS 541.605 to 541.695 and either federal mining laws or the Oregon Water Rights Act, and we fail to find any conflict with or impairment of rights
 
 *[276]
 
 arising out of those statutes. Defendants’ reliance on ORS 539.010 is misplaced. ORS 539.010 grants a vested right for beneficial use of water prior to 1909 "to the extent of the actual application to beneficial use” as of that date and does not grant a right to successive and separate appropriations of water. Appropriations subsequent to 1909 require a permit prior to acquisition of the right to the beneficial use. ORS 537.130.
 
 See also,
 
 Eakin,
 
 Adjudication Provisions under the 1909 Water Code
 
 — Survey
 
 of Case Law and Proposals for Legislative Amendment,
 
 50 Or L Rev 664 (1971). The demurrer was therefore properly sustained.
 

 Defendants also assign as error the sustaining of a demurrer to their fourth affirmative defense which alleged that the Division of State Lands has no jurisdiction over the subject matter of "the reclamation of mining land” because the State Department of Geology and Mineral Industries has exclusive jurisdiction of "restoration of mining land” pursuant to ORS 517.750 to 517.900 and because ORS 541.605 "defined 'removal’ as meaning an excess of fifty cubic yards in any one calendar year” and defendants " did not mine nor remove in excess of 24 cubic yards
 
 from their claim"
 
 (Emphasis supplied.)
 

 The statutes cited by defendants do not indicate an intention to vest exclusive jurisdiction over environmental regulation of mining lands in the Department of Geology and Mineral Industries, and ORS 541.610(1) centralizes "control of the removal of material from the beds and banks or filling of the waters of this state” in the Director of the Division of State Lands.
 

 Defendants’ second "jurisdictional” claim is simply not responsive to the complaint. The complaint charges them with moving material from the bed and bank of Forest Creek
 
 within
 
 their claim.
 

 Defendants’ last assignments of error objecting to the sustaining of demurrers to their counterclaims for
 
 *[277]
 
 inverse condemnation and for an unconstitutional "taking” in violation of the Fifth and Fourteenth Amendments to the United States Constitution are likewise untenable.
 
 See, Willard v. City of Eugene,
 
 25 Or App 491, 550 P2d 457, Sup Ct
 
 review denied
 
 (1976);
 
 State ex rel Andrus v. Click, supra.
 

 In summary, neither the United States Constitution, the Admission Act nor the federal mining laws preempts the state’s authority to require defendants to obtain a state permit prior to digging a water diversion trench in and near Forest Creek; the Oregon Fill and Removal Law (ORS 541.605 et seq) and the actions taken by plaintiff pursuant to the same did not constitute an unconstitutional impairment of contract either with the federal government or the state government pursuant to the federal and state mining and water laws; plaintiff’s actions did not constitute an unconstitutional taking by way of inverse condemnation of defendants’ property in violation of the Fifth and Fourteenth Amendments. Lastly, we see no conflict between the Fill and Removal Law, the state mining laws and the provisions governing the authority of the Rogue River Coordination Board. Each performs a separate function.
 

 Ventura County v. Gulf Oil Corporation, et al.,
 
 No. CV76-1723-ALS (CD Cal, filed April 7, 1977),
 
 [8]
 
 cited by defendants, is distinguishable. There the county by its zoning ordinance was attempting to prohibit Gulf Oil from conducting any and all oil exploration and extraction activities. Requiring the holder of a permit to mine on federal lands to obtain a permit under a state environmental protection law as in the case at bar is not the same as the banning of all mining activity as was the case in
 
 Ventura. See Texas Oil and Gas Corp. v. Phillips Petroleum Co.,
 
 277 F Supp 366
 
 *[278]
 
 (WD Okla 1967),
 
 aff’d
 
 406 F2d 1303 (10th Cir),
 
 cert
 
 denied 396 US 829, 90 S Ct 80, 24 L Ed 2d 80 (1969).
 

 Affirmed.
 

 [1]
 

 ORS 541.615(1) provides:
 

 "Except as otherwise specifically permitted under ORS 541.605 to 541.665, no person or governmental body shall remove any material from the beds or banks or fill any waters of this state without a permit issued under authority of the Director of the Division of State Lands, or in a manner contrary to the conditions set out in the permit.”
 

 [2]
 

 Article IV, § 3, clause 2, United States Constitution, provides:
 

 "The Congress shall have Power to dispose of and make all needful Rules and Regulations respecting the Territory or other Property
 
 *[272]
 
 belonging to the United States; and nothing in this Constitution shall be so construed as to Prejudice any Claims of the United States, or of any particular State.”
 

 [3]
 

 Article VI, clause 2, United States Constitution, provides:
 

 "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.”
 

 [4]
 

 Article I, § 8, clause 17, United States Constitution, provides:
 

 "To exercise exclusive Legislation in all Cases whatsoever, over such District (not exceeding ten Miles square) as may, by Cession of particular States, and the Acceptance of Congress, become the Seat of the Govemmeni of the United States, and to exercise like Authority over all Places purchased by the Consent of the Legislature of the State in which the Same shall be, for the Erection of Forts, Magazines, Arsenals, dock-Yards, and other needful Buildings * * * .”
 

 [5]
 

 Even if defendants had alleged that the land on which they mine their claim was subject to the Admission Act and the Jurisdiction Clause, the terms of the Oregon Legislative Assembly’s acceptance of propositions offered by Congress would not preclude the enforcement of the regulations at issue. The acceptance provides in relevant part:
 

 "Be it ordained by the Legislative Assembly of the State of Oregon, That the said State shall never interfere with the primary disposal of the soil within the same by the United States, nor with any regulations Congress may find necessary for securing the title in such soil to the bona fide purchasers thereof; and that in no case shall non-resident proprietors be taxed higher than residents. And that the said State shall never tax the lands or property of the United States within said State.”
 

 See also, Fort Leavenworth R. R. Co. v. Lowe,
 
 114 US 525, 5 S Ct 995, 29 L Ed 264 (1885);
 
 James v. Dravo Contracting Co.,
 
 302 US 134, 58 S Ct 208, 82 L Ed 155 (1937).
 

 We note that both parties in this case appear to have confused Jurisdiction Clause claims and Property Clause claims.
 
 See, Kleppe v. New Mexico,
 
 426 US 529, 96 S Ct 2285, 49 L Ed 2d 34 (1976).
 

 [6]
 

 Article I, § 10, United States Constitution, provides:
 

 "No State shall * * * make any * * * Law impairing the Obligation of Contracts * * * .”
 

 [7]
 

 Article I, § 21, Oregon Constitution provides:
 

 "No * * * law impairing the obligation of contracts shall ever be passed * *
 

 [8]
 

 So far as we can determine, this case was not reported in Federal Supplement. It is now on appeal to the U.S. Court of Appeals for the Ninth Circuit.