1997 DSD 27

SOUTH DAKOTA MINING ASSOCIA-
TION; Homestake Mining Company of
California; Wharf Resources, a Montana
General Partnership; Golden Reward
Mining Company Limited Partnership;
Naneco Minerals, Inc.; and Fred J. Gali
and Iwalana I. Gali; Plaintiffs,

v.

LAWRENCE COUNTY, a Political
Subdivision of the State of South
Dakota, Defendant,

v.

Jack COLE, Intervenor.

In re STATE OF SOUTH DAKOTA and
Action for the Environment,
Amicus Curiae.

No. CIV. 97-5013.

United States District Court,
D. South Dakota,
Western Division.

Sept. 26, 1997.

Roger A. Tellinghuisen, Fuller, Tellinghuisen, Gordon & Eckrich, P.C., Spearfish, SD, Marvin D. Truhe, Linden R. Evans, Truhe, Beardsley, Jensen, Helmers & VonWald, Rapid City, SD, for South Dakota Mining Ass'n, Inc., Homestake Mining Co. of California, Wharf Resources, Golden Reward Mining Co. Ltd. Parntership, Naneco Minerals, Inc., Fred J. Gali, Iwalana I. Gali.

Robert D. Hofer, Riter, Mayer, Hofer, Wattier & Brown, Pierre, SD, John H. Fitzgerald, Lawrence County State's Atty., Deadwood, SD, for Lawrence County, South Dakota.

Roxanne Giedd, Atty. General's Office, Pierre, SD, for State of South Dakota, amicus.

William G. Taylor, Jr., Woods, Fuller, Shultz & Smith, P.C., Sioux Falls, SD, for Action for the Environment, amicus, Jack Cole, amicus.

## MEMORANDUM OPINION AND ORDER

BATTEY, Chief Judge.

### I.  PROCEDURAL HISTORY

[¶ 1]  On November 5, 1996, an initiated ordinance amending ordinance Number 1 of section 5.11 of the Lawrence County Zoning Ordinance was approved by 51 percent of the electorate of Lawrence County. Plaintiffs— South Dakota Mining Association (SDMA), Homestake Mining Company of California ("Homestake"), Wharf Resources ("Wharf"), Golden Reward Mining Company Limited Partnership ("Golden Reward"), Naneco Minerals, Inc. ("Naneco") and Fred and Iwalana Gali ("Galis")—have filed a complaint for declaratory judgment pursuant to 28 U.S.C. §§ 2201–02. The complaint alleges in part that this ordinance preempts state and federal law because the ordinance conflicts with federal and state mining laws (Count I). Plaintiffs have filed a motion for partial summary judgment as to Count I of their complaint.[1]

[¶ 2]  The State of South Dakota ("the State") and Action for the Environment ("Action") both were granted leave to file an amicus curiae brief as to Count I of plaintiffs' complaint. The State has filed a brief in support of plaintiffs' motion for partial summary judgment. Action has filed a brief opposing plaintiffs' motion for partial summary judgment. Jack Cole intervened asserting his interest as a property owner affected by the ordinance. Cole joined in Action's brief opposing the plaintiffs' motion for partial summary judgment. All parties have responded to plaintiffs' motion for partial summary judgment.

### II.  FACTS

[¶ 3]  Ordinance section 5.11 added the following language to section 6 of the Lawrence County Zoning Ordinance, Ordinance Number 1:

> No new permits or amendments to existing permits may be issued for surface metal mining extractive industry projects in the Spearfish Canyon Area.

The ordinance defined "Spearfish Canyon" by legal description.[2] The area of land de-

---

1.  If plaintiffs prevail as to Count I, they have stated that they will not be seeking relief as to Count II.

2.  For the purposes of 5.11, 6–B, 3) Section 1 the Spearfish Canyon Area within Lawrence County is described as follows: Township 6 North, Range 2 East: All of sections 27, 28, 29, 32, 33, 34, and those portions of sections 30 and 31 east of Forest Road 134; Township 5 North, Range 2 East: all of sections 3, 4, 5, 7, 8, 9, 10, 16, 17, 18, 19, 20, 21, 28, 29, 30, 31, 32 and the portion of section 6 east of Forest Road 134; Township 5 North, Range 1 East: All of sections 13, 22, 23, 24, 25, 26, 27, 28, 33, 34, 35, 36 and portions of sections 1, 11, 12, and 14 east of Forest Road 134; Township 4 North, Range 1 East: All of sections 1, 2, 3, 4, 9, 10, 11 and 12; Township 4 North, Range 2 East: all of sections 4, 5, 6, 7, 8, 9, 10, 11, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 26, 27, 28, 29, 30, 31, 32, 33, 34, and 35. *See*

fined as "Spearfish Canyon" ("Spearfish Canyon" or "prohibited area") includes approximately 40,000 acres of Lawrence County extending from one to four miles east and west of Spearfish Canyon, encompassing approximately 10 percent of the total land area of Lawrence County. *See* Affidavits of Vernon Baker,[3] Carol Jean Miller,[4] and John Begeman.[5]

[¶ 4] Approximately 90 percent of the land defined as Spearfish Canyon is within the Black Hills National Forest and under the control and supervision of the United States Department of Agriculture, Forest Service, and the United States Department of Interior, Bureau of Land Management. This land contains unpatented mining claims or properties which are open to the public for mineral development. The other 10 percent contains privately owned patented mining claims. *See* Affidavits of Begeman, C.J. Miller, and Donald Murray.[6] Spearfish Canyon consists of some of the most beautiful land in the Black Hills.

[¶ 5] The land contained in the prohibited area may be classified into the following three categories:

(1) lands within the Black Hills National Forest that are open to mineral location and development; (2) unpatented mining claims within the Black Hills National Forest which are held by mining companies and other private parties; and (3) privately owned lands which consist mostly of patented mining claims.

Plaintiffs' Statement of Facts (Docket # 13); Affidavit of Murray. The third category includes:

(1) lands that are part of an active mining operation under local, state, and federal permits (e.g., the Wharf Mine); (2) lands with a state mine permit that are not currently being mined (e.g., Naneco's Johnson Gulch property); and (3) lands owned by individuals who lease their mineral rights to mining companies while retaining mineral royalty rights (e.g. Galis' mining claims).

Plaintiffs' Statement of Facts; Affidavit of Murray.

[¶ 6] During the past fifteen years, five mining companies have had active surface mining operations within Lawrence County. Two of the plaintiffs, Wharf and Golden Reward, either had or currently have active surface mining operations only. *See* Affidavit of Begeman. Both Wharf and Golden Reward have properties within the prohibited area in the form of patented and unpatented mining claims. *Id.* Currently, Wharf's and Golden Reward's unpatented mineral properties within the "Spearfish Canyon" area are undergoing active mineral exploration pursuant to state and federal law. *Id.* Some of Wharf's privately owned patented mining claims within the prohibited area are also part of Wharf's active surface mining operation which is operating under federal, state, and local laws. *Id.*

[¶ 7] Two members of the SDMA who are not plaintiffs, LAC Minerals (U.S.A.) Inc. ("LAC Minerals"), and Brohm Mining Corp. ("Brohm"), also either had, or currently have, surface mining operations only. *See* Affidavit of Ronald D. Everett.[7] LAC Minerals owns or controls patented and unpatented mineral properties within the prohibited area. *Id.* From 1988 to the fall of 1993, LAC Minerals operated the Richmond Hill Mine which was an active gold and silver surface mining operation. *Id.* The mine is currently undergoing reclamation activities. *Id.* LAC Minerals does not own or operate an active underground mine within South Dakota. *Id.* Brohm owns or controls the

---

Sample General Election Ballot, Exhibit to Affidavit of Richard Fort.

3. Employed as a general manager for Homestake Mine, Lead, South Dakota.

4. An exploration geologist employed by Naneco Minerals, Inc.

5. Employed by Wharf Resources as the general manager for Wharf mine.

6. Forester with the United States Department of Agriculture, United States Forest Service, who works primarily in the Spearfish/Nemo District Ranger's office and is responsible for the supervision of the Black Hills National Forest.

7. Employed by LAC Minerals as Controller at the Richmond Hill mine located near Lead, South Dakota.

Gilt Edge Mine which is an active gold and silver surface mining operation. Affidavit of Randy E. Beck.[8] Brohm does not have an active underground mine within South Dakota.

[¶ 8] Plaintiff Homestake has both an active surface mine and an active underground mine in Lawrence County. Affidavit of Baker. Homestake has both patented and unpatented mining claims within the area defined as Spearfish Canyon. *Id.* Naneco currently holds a state surface mine permit but has not begun mining. Affidavit of C.J. Miller. Naneco also owns or controls privately owned lands which consist of mostly patented mining claims which are located within the prohibited area. *Id.*

[¶ 9] The Galis own patented mining claims in Lawrence County within the area defined as Spearfish Canyon. Affidavit of Fred Gali. The Galis currently lease these mineral rights to mining companies while retaining a royalty. *Id.*

[¶ 10] Defendant Lawrence County did not object to the statement of facts set forth by plaintiffs. Intervenor Cole's objections to plaintiffs' statement of facts were not material.[9] As far as whether plaintiffs have patented or unpatented land in the prohibited area,

Cole stated that he "has no basis to determine the accuracy of representations regarding mineral ownership in the area subject to the ordinance, and therefore accepts the same as truthful for purposes of this Motion for Partial Summary Judgment." *See* Intervenor's Reply to Plaintiffs' Statement of Facts in Support of Motion for Partial Summary Judgment.

### III. JURISDICTION[10]

[¶ 11] Article III of the Constitution and the Declaratory Judgment Act [hereinafter "Act"] restricts the jurisdiction of federal courts to actual ongoing cases or controversies. U.S. Const. art. III, § 2, cl. 1; 28 U.S.C. §§ 2201–02. *See also Douglas v. Brownell,* 88 F.3d 1511, 1515 (8th Cir.1996) (citing *Lewis v. Continental Bank Corp.,* 494 U.S. 472, 477, 110 S.Ct. 1249, 1253, 108 L.Ed.2d 400 (1990); *Arkansas AFL–CIO v. F.C.C.,* 11 F.3d 1430, 1435 (8th Cir.1993) (en banc)); *Sisseton–Wahpeton Sioux Tribe v. United States,* 804 F.Supp. 1199, 1204 (D.S.D.1992). Independent of the Act, a plaintiff must allege that a district court has jurisdiction. This Court has jurisdiction to proceed independent of the Act pursuant to 28 U.S.C. §§ 1331, 1343.

---

**8.** Employed by Brohm as the General Manager of Gilt Edge Mine located near Deadwood, South Dakota.

**9.** Intervenor Cole objected to the plaintiffs' reference to the land defined as Spearfish Canyon as "the prohibited area." This objection is not material to the issues before this Court. Intervenor also states that the land covered by the ordinance at issue is also under the control and supervision of Lawrence County and the state of South Dakota and that the land is covered by federal, state, and county ordinances. Plaintiffs do not disagree with this point. Intervenor also disputes any implication that the majority of the affected property is "privately owned patented mining claims." The affidavits presented by plaintiffs represent that 90 percent of the land defined as Spearfish Canyon is land owned by the government. Plaintiffs have not argued that the majority of the land affected by the ordinance is "privately owned patented mining claims." Intervenor states that the majority of the governmental property is undeveloped for any purpose. Whether the federal land within the area defined as Spearfish Canyon is currently developed is not the issue; the issue is whether federal law permits the surface mining and local law is in conflict with federal law.

Cole objects to plaintiffs' statement that "lands that are part of [an active] mining operation" is misleading because it implies that surface mining has taken place on the land within the area defined as Spearfish Canyon under the ordinance. Plaintiffs are not arguing that they have obtained new permits or amended permits for surface mining under the current ordinance. Cole also disputes plaintiffs' statement that the majority of gold mining in the recent years has come from surface mining. Cole believes that the majority of gold mining is accomplished through underground mining. How the majority of gold mining is performed is not material to the issue in this case—whether the local ordinance conflicts with state and federal law. In addition, plaintiffs do not disagree that the majority of gold mining is accomplished through underground mining. *See* Supplement to Plaintiffs' Brief in Response to Action's Amicus Curiae Brief.

**10.** In an order issued by this Court, this Court required the parties to brief the issue of whether this action was ripe for adjudication under the Declaratory Judgment Act.

[¶ 12]  The Court has considered the parties' submissions as to ripeness and concludes this matter is ripe for consideration. *See Abbott Laboratories v. Gardner,* 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967); *Pacific Gas & Elec. v. State Energy Resources Conserv. & Dev. Comm.,* 461 U.S. 190, 103 S.Ct. 1713, 75 L.Ed.2d 752 (1983); *Employers Ass'n v. United Steelworkers AFL–CIO–CLC,* 32 F.3d 1297, 1299 (8th Cir. 1994).

## IV.  SUMMARY JUDGMENT STANDARD

[¶ 13]  The posture of this case is appropriate for summary judgment.[11]  Under Rule 56(c) of the Federal Rules of Civil Procedure, a movant is entitled to summary judgment if the movant can "show that there is no genuine issue as to any material fact and that [the movant] is entitled to judgment as a matter of law."[12]  In determining whether summary judgment should issue, the facts and inferences are viewed in the light most favorable to the nonmoving party, and the burden is placed on the moving party to establish both the absence of a genuine issue of material fact and that such party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–90, 106 S.Ct. 1348, 1356–57, 89 L.Ed.2d 538 (1986).  Once the moving party has met this burden, the nonmoving party may not rest on the allegations in the pleadings, but by affidavit or other evidence must set forth specific facts showing that a genuine issue of material fact exists.

[¶ 14]  In determining whether a genuine issue of material fact exists, the Court views the evidence presented based upon which party has the burden of proof under the underlying substantive law.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 253–55,

106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986). The nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts," and "[w]here the record as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.' " *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356.

[¶ 15]  The teaching of *Matsushita* was further articulated by the Supreme Court in *Eastman Kodak Co. v. Image Technical Services, Inc.,* 504 U.S. 451, 468, 112 S.Ct. 2072, 2083, 119 L.Ed.2d 265 (1992) where the Court said, "*Matsushita* demands only that the nonmoving party's inferences be reasonable in order to reach the jury, a requirement that was not invented, but merely articulated, in that decision."  The Court expounded on this notion by reiterating its conclusion in *Anderson* that, "[s]ummary judgment will not lie ... if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Eastman Kodak,* 504 U.S. at 468 n. 14, 112 S.Ct. at 2083 n. 14 (quoting *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510).  To survive summary judgment there must be evidence that "reasonably tends to prove" plaintiffs' theory.  *Id.* (citations omitted).

[¶ 16]  The trilogy of *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986), *Anderson,* and *Matsushita* provides the Court with a methodology in analyzing plaintiffs' motion for summary judgment.  Under this trilogy, it is incumbent upon the nonmoving party, based upon the showing set forth by the moving party (defendants), to establish significant probative evidence to prevent summary judgment. *See Terry A. Lambert Plumbing, Inc. v. Western Sec. Bank,* 934 F.2d 976, 979 (8th Cir.1991).

---

**11.**  Action and Cole argue that this case is not an appropriate case for summary judgment, in part, because the United States Supreme Court has upheld state laws which advance different objectives than federal laws.  This Court concludes that summary judgment is appropriate in this case. *See, e.g., United States v. Nye County, Nevada,* 920 F.Supp. 1108 (D.Nev.1996) (court consider whether government entitled to summary judgment on issue of whether a county resolution was preempted by federal law).

**12.**  The Supreme Court has instructed that "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy, and inexpensive determination of every action.' " *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986).

## V. DICUSSION

### [¶ 17]  A.  Federal Law

### [¶ 18]  1.  Preemption

■ [¶ 19]  Plaintiffs in this case argue that the Lawrence County ordinance at issue is preempted by federal law. The Court agrees. Pursuant to the Property Clause of the United States Constitution,[13] Congress retains the power to enact "needful" legislation which protects, regulates, and respects public lands. *Kleppe v. New Mexico,* 426 U.S. 529, 537–39, 96 S.Ct. 2285, 2291, 49 L.Ed.2d 34 (1976). The Supreme Court has repeatedly held that "the power over public land entrusted to Congress is without limitations." *Id.* (citations omitted).

■ [¶ 20]  Article VI clause 2 of the United States Constitution, the Supremacy Clause, provides "the laws of the United States ... shall be the supreme law of the land ... with anything in the laws of any state to the contrary notwithstanding." When Congress acts pursuant to the Property Clause, federal law enacted will override conflicting state laws under the Supremacy Clause. *Kleppe,* 426 U.S. at 541–43, 96 S.Ct. at 2293. The Supremacy Clause is the source of the federal preemption doctrine. *Gade v. National Solid Wastes Mgt. Ass'n,* 505 U.S. 88, 107–09, 112 S.Ct. 2374, 2388, 120 L.Ed.2d 73 (1992). Pursuant to the Supremacy Clause, state law is preempted when it interferes or contradicts a congressional act. *Hankins v. Finnel,* 964 F.2d 853, 861 (8th Cir.), *cert. denied,* 506 U.S. 1013, 113 S.Ct. 635, 121 L.Ed.2d 566 (1992).

■ [¶ 21]  As to whether a law is preempted, "[t]he lines of inquiry are identical whether it be either state statute or local ordinance which is being scrutinized against the preemptive force of federal law." *Texas Manufactured Hous. Ass'n v. City of Nederland,* 905 F.Supp. 371, 377 (E.D.Tex.1995),

aff'd, 101 F.3d 1095 (5th Cir.1996), *cert. denied,* —— U.S. ——; 117 S.Ct. 2497, 138 L.Ed.2d 1003 (1997) (citing *City of Burbank v. Lockheed Air Terminal, Inc.,* 411 U.S. 624, 638, 93 S.Ct. 1854, 1862, 36 L.Ed.2d 547 (1973)). *See also Blue Circle Cement, Inc. v. Board of County Comm'rs of the County of Rogers,* 27 F.3d 1499, 1504 n. 4 (10th Cir. 1994) (under a preemption analysis local ordinances are analyzed the same as state laws).

■ [¶ 22]  When determining if federal law preempts state law, a court should examine the "text and structure of a statute to determine if it is the 'clear and manifest purpose of Congress' to preempt an area of state law." *Peters v. Union Pac. R.R.,* 80 F.3d 257, 261 (8th Cir.1996) (citations omitted). In examining whether a state statute is preempted by a federal statute, a court must look to the federal law as a whole and to the federal law's object and policy. *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 51–52, 107 S.Ct. 1549, 1555, 95 L.Ed.2d 39 (1987).

■ [¶ 23]  One type of preemption is conflict preemption; this is the type of preemption which plaintiffs urge is present in this case. Conflict preemption occurs when there is a conflict between federal and state law. *See, e.g., Hillsborough County, Florida v. Automated Medical Laboratories,* 471 U.S. 707, 712–14, 105 S.Ct. 2371, 2375, 85 L.Ed.2d 714 (1985). "A conflict exists when the local enactment 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress,'" *ENSCO, Inc. v. Dumas,* 807 F.2d 743, 745 (8th Cir. 1986) (quoting *Hines v. Davidowitz,* 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941)), or when it is impossible to comply with both federal and state law, *Florida Lime & Avocado Growers, Inc. v. Paul,* 373 U.S. 132, 141–45, 83 S.Ct. 1210, 1217–18, 10 L.Ed.2d 248 (1963).[14] Once state law is found to conflict with federal law, the state law is deemed to be "without effect." *Cipollone v.*

---

**13.** The Property Clause provides: "Congress shall have Power to dispose of and make all needful Rules and Regulations respecting the Territory or other Property belonging to the United States." U.S. Const. art. IV, § 3, cl. 2.

**14.** Federal law will not only preempt a state law when the two are "plainly contradictory," but a

state statute is preempted by a federal statute when " 'the incompatibility between [them] is discernible only through inference.'" *Hankins,* 964 F.2d at 861 (citing *Hayfield Northern R.R. Co. v. Chicago & North Western Transp. Co.,* 467 U.S. 622, 626–28, 104 S.Ct. 2610, 2614, 81 L.Ed.2d 527 (1984)).

*Liggett Group, Inc.,* 505 U.S. 504, 515–17, 112 S.Ct. 2608, 2617, 120 L.Ed.2d 407 (1992). It is not plaintiffs' position that federal law in this case prohibits all state regulation of either patented or unpatented mining claims. Plaintiffs believe that the local ordinance is unconstitutional under the Supremacy Clause because the local ordinance is in conflict with the Mining Act of 1872.[15] *See California Coastal Commission v. Granite Rock Co.,* 480 U.S. 572, 582–84, 107 S.Ct. 1419, 1426, 94 L.Ed.2d 577 (1987) (concluding that Mining Act of 1872 does not preempt all state regulation of unpatented mining claims in national forests).

[¶ 24]  2.  **Mining Act of 1872 and Subsequent Federal Law**

[¶ 25]  The foundation of federal mining law began with the Mining Act (Law) of 1872 ("Mining Act"). *Brubaker v. Board of County Commissioners,* 652 P.2d 1050, 1054 (Colo. 1982). Section 22 of the Mining Act provides:

> [e]xcept as otherwise provided, *all valuable mineral deposits* in lands belonging to the United States, both surveyed and unsurveyed, *shall be free and open to exploration* and purchase ... by citizens of the United States ... according to the local customs or rules of miners in the several mining districts, so far as the same are applicable and not inconsistent with the laws of the United States.

30 U.S.C. § 22 (emphasis added). The Mining Act permits private citizens to enter federal lands and explore for mineral deposits. *Granite Rock,* 480 U.S. at 573–76, 107 S.Ct. at 1422. "As evidenced by [section 22], the underlying purpose of the mining laws is to encourage exploration for and development of mineral resources on public lands." *Brubaker,* 652 P.2d at 1055 (citing *United States*

*v. Weiss,* 642 F.2d 296 (9th Cir.1981)). Under the Mining Act, once a person locates a valuable mineral deposit on federal land, and properly complies with the other statutory requirements, the individual will have the exclusive right to the possession of the land but the United States retains title. *Granite Rock,* 480 U.S. at 576, 107 S.Ct. at 1422 (citing 30 U.S.C. § 26). "The holder of a perfected mining claim may secure a patent to the land by complying with the requirements of the Mining Act and regulations promulgated thereunder, see 43 C.F.R. § 3861.1 et seq. (1986), and, upon issuance of the patent, legal title to the land passes to the patent holder." *Id.*

[¶ 26]  At the time of the enactment of the Mining Act, environmental issues were not yet a concern. However, since the enactment of the Mining Act, subsequent acts have been enacted relating to mining claims located on federal land. In 1955, Congress enacted the Multiple Surface Use Act, codified and amended at 30 U.S.C. §§ 611–615, which gave the Bureau of Land Management ("BLM") the authority to manage non-mineral resources within the boundaries of an unpatented mining claim. *See* 30 U.S.C. § 612. Passage of this Act ended a claimant's exclusive right of possession. In 1976, the Federal Land Policy and Management Act (FLPMA), 43 U.S.C. § 1701, *et seq.,* also affected mining law. The FLPMA required that the secretary, in managing the public lands, take action necessary to prevent unnecessary degradation of the public lands. This Act also recognized that "public lands should be managed in a manner which recognizes the Nation's need for domestic sources of minerals ... from the public lands including implementation of the Mining and Minerals Policy Act of 1970 ... as it pertains to public lands." 43 U.S.C. § 1701(a)(12).

---

**15.** In addition to the Mining Act of 1872, plaintiffs also believe that other federal laws preempt the ordinance at issue. In plaintiffs' complaint, they argue that the ordinance violates plaintiffs' rights to surface mine pursuant to the 1976 Federal Land Policy and Management Act, 43 U.S.C. §§ 1701, *et seq.,* and the National Environment Policy Act of 1969, 42 U.S.C. § 4321 *et seq.* Plaintiffs' brief in support of its motion for partial summary judgment also points out that the Stock Raising Homestead Act of 1916, 43 U.S.C.

§ 291, also creates a legal right to enter and mine federal lands. Plaintiffs' main emphasis is that the Lawrence County ordinance is in conflict with the Mining Act of 1872. Therefore, this Court will first consider if the Mining Act of 1872 preempts the ordinance. Only upon a conclusion that the Mining Act of 1872 does not preempt the ordinance will the Court consider if the other federal statutes preempt the Lawrence County ordinance.

[¶ 27]  **3. Persuasive Case Law**

[¶ 28]  In *Brubaker v. Board of County Commissioners,* 652 P.2d 1050 (Colo.1982), the Supreme Court of Colorado held that the El Paso County Board of County Commissioners' ("the Board") denial of plaintiffs' use permit authorizing plaintiffs to conduct limited test drilling on the site of the plaintiffs' unpatented mining claims located on federal land violated the preemption doctrine. Although *Brubaker* does not involve a facial challenge to a local zoning ordinance, the conclusions reached by the Colorado Supreme Court provide insight to the issue currently before this Court.

[¶ 29]  The court in *Brubaker* determined that "the Board ha[d] applied its zoning ordinances so as to prohibit a use of federal property that has been authorized by federal law." *Id.* at 1054. Plaintiffs in *Brubaker* argued that the Board's denial of the use permit was in conflict with the Mining Act of 1872. The court recognized that the mining laws were enacted so "that the prospector could go out into the public domain, search for minerals and upon discovery establish a claim to the lands upon which the discovery was made." *Id.* at 1056 (citing *United States v. Curtis–Nevada Mines, Inc.,* 611 F.2d 1277, 1281 (9th Cir.1980)). The plaintiffs' very reason for seeking the use permit was to "conduct drilling operations necessary to establish their discovery of valuable mineral deposits on the contested claims." The *Brubaker* court concluded, "The Board seeks not merely to supplement the federal scheme, but to prohibit the very activities contemplated and authorized by federal law. Such a veto power is not consistent with the Supremacy Clause." *Id.*

[¶ 30]  In reaching its conclusion, the Colorado Supreme Court reasoned that the plaintiffs' activity could be characterized as "exploration" and therefore fell within the "express scope" of the Mining Act of 1872. *Id.* at 1057. Section 22 of the Act provides "all valuable mineral deposits in lands belonging to the United States ... shall be free and open to exploration and purchase....". The court reasoned that denying plaintiffs their right to core drilling would prohibit them from determining the validity of their claims. *Id.* By denying plaintiffs the ability to determine the validity of their claims, the court determined that the Board's actions "frustrate[d] implementation of the very scheme of disposition of federal mineral lands that is at the core of 30 U.S.C. § 22." *Id.* at 1057–58.

[¶ 31]  The court also concluded that the Board's actions were not saved by the provisions in 30 U.S.C. §§ 22 and 26 which authorized state regulation. The court concluded that these sections did not provide support for the Board's position because the sections only allowed state regulation if that regulation was not inconsistent with federal law. *Id.* at 1058. In reaching this conclusion, the Court relied on the United States Supreme Court case of *Butte City Water Co. v. Baker,* 196 U.S. 119, 25 S.Ct. 211, 49 L.Ed. 409 (1905). In *Baker,* the Court upheld a Montana law which prescribed certain location requirements for mining claims. *Brubaker,* 652 P.2d at 1058. However, in interpreting the *Baker* Court's decision, the Colorado Supreme Court noted that in *Baker* the Court did not "sanction all state regulation of mining claims, and indicated that state laws *prohibiting* activities authorized by the federal mining laws would be impermissible." *Brubaker,* 652 P.2d at 1058 (emphasis added).

[¶ 32]  The court's conclusion in *Brubaker* lends support to this Court's conclusion in this case. The court stated:

> It is established that state or local regulation supplementing the mining laws is permissible. *See* 30 U.S.C. §§ 22, 26; *Butte City Water Co. v. Baker,* supra; *State ex rel. Andrus v. Click,* [97 Idaho 791, 554 P.2d 969 (1976)]. State and local laws that merely impose reasonable conditions upon the use of federal lands may be enforceable, particularly where they are directed to environmental protection concerns. *See State ex rel. Andrus v. Click,* supra; Note, State and Local Control of Energy Development on Federal Lands, 32 Stanford L.Rev. 373 (1980). Indeed, the appellants concede that such regulation is proper. In this case, however, the Board seeks not to regulate but to prohibit the appellants' core drilling activities. In the resolution denying the application the

Board stated that its reasons for this action were inconsistency of the appellants' proposed activities with the long-range land use plans of El Paso County and with existing, surrounding uses. This is not denial of a permit because of failure to comply with reasonable regulations supplementing the federal mining laws, but reflects simply a policy judgment as to the appropriate use of the land. That judgment cannot override the conflicting directive of federal legislation. As stated in *Ventura County,* 601 F.2d at 1084, "The federal Government has authorized a specific use of federal lands, and [the county] cannot prohibit that use, either temporarily or permanently, in an attempt to substitute its judgment for that of Congress." *Brubaker,* 652 P.2d at 1059.

[¶ 33] In *Brubaker,* the court also rejected the conclusion that the Mining Act of 1872 was not preempted because of environmental acts which have been passed following Congress's enactment of the Mining Act. The trial court had concluded that the Board's actions furthered the environmental concerns of the National Environmental Policy Act of 1969 (NEPA), 42 U.S.C. § 4321 *et seq.,* and the Environmental Quality Improvement Act of 1970, codified at 42 U.S.C. §§ 4371–4374 (1976), and that therefore, the Board's denial of the use permit was consistent with Congress's intent. *Brubaker,* 652 P.2d at 1059. The court concluded that the " 'NEPA was not intended to repeal by implication any other statute.' " *Id.* (quoting *United States v. SCRAP,* 412 U.S. 669, 694, 93 S.Ct. 2405, 2419, 37 L.Ed.2d 254, 273 (1973)). "If there is unavoidable conflict between NEPA and other federal authority, it is the NEPA that must give way." *Id.* at 1059–60 (citing *Flint Ridge Development Co. v. Scenic Rivers Ass'n,* 426 U.S. 776, 96 S.Ct. 2430, 49 L.Ed.2d 205 (1976)). The court in *Brubaker* also concluded that reference to legislation following the enactment of the NEPA, the Mining and Minerals Policy Act of 1970, 30 U.S.C. § 21a (1976), did not support the trial court's conclusion. *Id.* at 1060. The Mining and Minerals Policy Act provides in pertinent part, "it is the continuing policy of the Federal Government in the national interest to foster and encourage private enterprise in

... the orderly and economic development of domestic mineral resources...." *Id.* (citing 30 U.S.C. § 21a).

[¶ 34] In *Brubaker,* the court relied on the Ninth Circuit case of *Ventura County v. Gulf Oil Corp.,* 601 F.2d 1080 (1979), *aff'd,* 445 U.S. 947, 100 S.Ct. 1593, 63 L.Ed.2d 782. In *Ventura,* the issue on appeal was whether Ventura County ("Ventura") could require the federal government's lessee, Gulf Oil Corporation ("Gulf"), "to obtain a permit from Ventura in compliance with Ventura's zoning ordinances governing oil exploration and extraction activities before Gulf c[ould] exercise its rights under the lease and drilling permits acquired from the government." *Ventura,* 601 F.2d at 1082. The county permits are granted if based upon eleven mandatory conditions and additional conditions at the discretion of the planning board. Gulf was advised by Ventura that if it wanted to continue its drilling operations it would need to obtain a permit.

[¶ 35] Ventura filed a complaint against Gulf seeking a preliminary injunction which would require Gulf to obtain a permit from the county to continue drilling. The district court dismissed Ventura's complaint against Gulf for a preliminary injunction. Ventura argued on appeal that the district court erred in finding that the local ordinance requiring a permit was preempted by federal law.

[¶ 36] The Mineral Lands Leasing Act of 1920, 30 U.S.C. §§ 181 *et seq.,* leased 120 acres located within the Los Padres National Forest in Ventura for purposes of oil exploration and development. The regulation of oil exploration and drilling under the Mineral Lands Leasing Act is extensive. The lease signed by Gulf contained requirements involving protection of the environment. Since the land leased by Gulf was within a national forest, the lease had additional conditions which were designed to combat the environmental hazards which may result from the mining operations. Gulf was also required to obtain specific drilling permits from the Department of the Interior, Geological Survey, and the Department of Agriculture. The Geological Survey formalized its procedures according to NEPA and approved Gulf's pro-

posed drilling subject to ten conditions. The Forest Service also issued Gulf a permit subject to conditions aimed at the protection of the national forest. Gulf was also subject to regulations promulgated by the Secretary of the Interior involving oil and gas leasing and subsurface and surface operations. In addition, given that the land was within a national forest, Gulf must also comply with the regulations of the Secretary of Agriculture. Even though the federal government had set up an extensive permit scheme, Ventura believed that it was entitled to final approval. Ventura sought to require Gulf to obtain an open use permit which may be issued on whatever conditions Ventura determined appropriate or may not be issued at all.

[¶ 37] The court in *Ventura* held that federal law preempted the local ordinance because the local ordinance would "stand as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id.* at 1086. The court rejected Ventura's argument that the savings clause in the Mineral Lands Leasing Act[16] authorized the state ordinance. The court held that the proviso to the savings clause reserved to the states only rights which the states already possessed and a state does not possess the right to "apply local regulations impermissibly conflicting with achievement of a congressionally approved use of federal lands." *Id.* Relying on *Kleppe,* the court concluded, " '[W]here those state laws conflict ... with other legislation passed pursuant to the Property Clause, the law is clear: The state laws must recede.' " *Id.* (quoting *Kleppe,* 426 U.S. at 543, 96 S.Ct. at 2293–94). *See also State ex rel. Andrus v. Click,* 97 Idaho 791, 554 P.2d 969 (1976) (holding that requiring a permit and the restoration of the land after the mining operations had concluded did not preempt federal law; however, the

court did recognize that where a state regulation rendered it *impossible* to exercise a right granted through federal legislation, that state regulation would be in conflict with the federal right).[17]

### [¶ 38] 4. Mining Act of 1872 Preempts Lawrence County Ordinance

[¶ 39] This Court holds that the Mining Act does leave room for local regulation; however, that local regulation must not conflict with federal law. *Brubaker,* 652 P.2d at 1056. 30 U.S.C. § 22 allows the right to explore and purchase mineral deposits belonging to the United States "under regulations prescribed by law, and according to the *local* customs or rules of miners in the several mining districts, *so far as the same are applicable and not inconsistent with the laws of the United States.*" 30 U.S.C. § 22 (emphasis added). Section 26 of the Act defines a locator's right to possession and enjoyment of the mining claim as long as the locator complies with "law of the United States, and with State, territorial, and *local regulations not in conflict with the laws of the United States.*" 30 U.S.C. § 26 (emphasis added). The Act is clear that local regulations are not permitted to the extent that they would conflict with the Act.

[¶ 40] The Lawrence County ordinance prohibits surface mining which is authorized under federal law. Therefore, the Court finds that a conflict exists between local law and federal law. *See, e.g., Brubaker,* 652 P.2d at 1060; *Ventura,* 601 F.2d at 1085–86; *State ex rel. Cox v. Hibbard,* 31 Or.App. 269, 570 P.2d 1190, 1195 (1977). Based upon this conflict, this Court holds that federal law, specifically the Mining Act of 1872 preempts local law. *ENSCO,* 807 F.2d at 744. When a federal law preempts a local ordinance, that ordinance is deemed to

---

16. The savings clause stated:
   Nothing in this chapter shall be construed or held to affect the rights of the States or other local authority to exercise any rights which they may have, including the right to levy and collect taxes upon improvements, output of mines, or other rights, property, or assets of any lessees of the United States.
   *Ventura,* 601 F.2d at 1086 (quoting 30 U.S.C. § 189).

17. In *Andrus,* the Idaho Supreme Court held that a local regulation requiring an application of a permit to conduct mining operations on federal land did not violate the preemption doctrine. To obtain a permit, an operator had to pay a fee which established a surety bond that was conditioned upon certain obligations. An operator was obligated to return the land and streams disturbed by the mining operations to their original state, so far as reasonably possible.

be without effect. *Cipollone,* 505 U.S. at 515–17, 112 S.Ct. at 2617. This Court finds the Lawrence County ordinance is without effect.

### [¶ 41] 5. Arguments by Action and Cole

[¶ 42] Action and Cole ("the proponents") present two main arguments for their conclusion that summary judgment is not warranted. First, they believe that there is *not* a conflict between the Mining Act of 1872 and the Lawrence County ordinance. Second, they argue in the alternative that if the Court determines that there is a conflict, that the issue is inappropriate for summary judgment. The Court is unconvinced. The ordinance defines an absolute prohibition against the issuance of new permits or amendments. Reasonable regulation is one thing—absolute prohibition is quite another. The ordinance's absolute prohibition of surface mining is in violation of the Mining Act of 1872. Federal laws and regulations recognize the environmental effects which mining may have on the land. Those regulations provide adequate safeguards to whatever environmental impact surface mining may have on this existing area.

[¶ 43] The cases relied upon by Action and Cole in arguing that the Lawrence County ordinance does not create a conflict between local and federal law are distinguishable. Those cases did not involve an absolute prohibition of an "act." *See State ex rel. Cox v. Hibbard,* 570 P.2d at 1194 (distinguished *Ventura* on the grounds that zoning ordinance at issue in *Ventura* was attempting to prohibit any and all oil exploration and extraction activities and the ordinance at issue in *Cox* required a state permit to mine on federal lands; the court concluded that requiring a permit to mine

was not the same as the banning of all mining activity and that the permit did not preempt federal law). In addition, in some of the cases relied upon by Action and Cole the federal statute at issue also authorizes the state to establish more restrictive state regulation if the state so chooses.

[¶ 44] *State ex rel. Andrus v. Click,* 97 Idaho 791, 554 P.2d 969 (1976), is one such case. Action and Cole argue that often federal environmental regulations are a floor, not a ceiling to the regulation which a state may enact. This Court distinguishes *Andrus* from this case in that the federal statute at issue in that case permitted greater regulations by the state. Action and Cole also rely on *Blue Circle Cement, Inc. v. Board of County Commissioners of the County of Rogers,* 27 F.3d 1499 (10th Cir.1994).[18] This Court distinguishes the decision reached by the court in *Blue Circle* for the same reason as it distinguished *Andrus*—the federal statute at issue gives the state and local government the power to enact regulations which are *more stringent* than those imposed on the federal level. *See* 42 U.S.C. § 6929 (federal statute at issue in *Blue Circle*). The Mining Act of 1872 only permits state and local ordinances which are not inconsistent with the federal laws. The Mining Act does not give state and local governments more authority than the federal laws.

[¶ 45] Second, in *Blue Circle* the country ordinance was not a total prohibition on disposal of hazardous waste. The court in *Blue Circle* even recognizes that county ordinances which have prohibited storage, treatment, or disposal of hazardous waste have been held to be preempted by the RCRA. *See, e.g., ENSCO,* 807 F.2d at 744–45; *Hermes Consol., Inc. v. People,* 849 P.2d

---

**18.** In *Blue Circle,* an operator of a cement manufacturing plant, Blue Circle, brought suit against the board of county commissioners arguing that the ordinance which was enacted by the board was preempted by federal law, the Resource Conservation and Recovery Act (RCRA). The county ordinance required operators to obtain a conditional use permit to establish an industrial waste disposal site. Blue Circle felt that its burnings of hazardous waste fuels (HWFs) in its cement plant did not constitute disposal but constituted "recycling" or "burning for energy recovery." Therefore, Blue Circle determined that

it was not required to comply with the ordinance. A subsequent ordinance was enacted defining "disposal." Under this ordinance, Blue Circle would have been required to obtain from the board a conditional use permit. Rather than obtaining a permit, Blue Circle filed suit in federal district court seeking a declaratory judgment. One of Blue Circle's arguments was that the county ordinance was preempted by federal law. The district court held that the RCRA did not preempt the county ordinance and Blue Circle appealed. The Tenth Circuit affirmed the district court's decision.

1302, 1311 (Wyo.1993); *City of Jacksonville v. Arkansas Dep't of Pollution Control & Ecology,* 308 Ark. 543, 824 S.W.2d 840, 842 (1992). To the contrary, the Lawrence County ordinance is a total prohibition on surface mining. *See also LaFarge Corp. v. Campbell,* 813 F.Supp. 501 (W.D.Tex.1993) (federal statute also allows more stringent state regulation and is not a total prohibition);[19] *California Coastal Commission v. Granite Rock Co.,* 480 U.S. 572, 586–88, 107 S.Ct. 1419, 1428, 94 L.Ed.2d 577 (1987) (state law was not a total prohibition).

[¶ 46] This Court concludes that the Lawrence County local ordinance violates the preemption doctrine. There is a conflict between federal law and the ordinance. "[W]here those state laws conflict ... with other legislation passed pursuant to the Property Clause, the law is clear: The state laws must recede." *Kleppe,* 426 U.S. at 543, 96 S.Ct. at 2293–94.

[¶ 47] **B. State Law**

[¶ 48] The Court, having found that the ordinance is invalid as being in conflict with federal law, need not address the issue of a violation of state law. Such a determination should more appropriately be addressed by a South Dakota state court. Whether the ordinance is in violation of state law is moot by this Court's holding that Lawrence County Ordinance Number 1, Section 5.11.6 is a violation of federal law.

**VI. CONCLUSION**

[¶ 49] Given the above analysis of federal and state law, it is hereby

[¶ 50] ORDERED that plaintiffs' motion for partial summary judgment (Docket # 11) is granted.

[¶ 51] IT IS FURTHER ORDERED that the ordinance is deemed to be without effect or invalid and Lawrence County is enjoined from enforcing the ordinance. A judgment issuing a permanent injunction shall issue forthwith.

[¶ 52] IT IS FURTHER ORDERED that based upon this opinion, the Court deems that oral argument is unnecessary.

---

19. Action for the Environment and Cole also rely on this case. The district court in *LaFarge* held that a prohibition of hazardous waste treatment in a state law was not preempted by a federal law which encouraged such treatment. *See* 42 U.S.C. § 6929. The Texas statute at issue in *LaFarge* prohibits a new commercial hazardous waste management facility from receiving a permit from the Texas Water Commission and the Texas Air Control Board if the facility is within one-half mile of certain structures. LaFarge unsuccessfully argued that the statute was preempted by the Resource Conservation and Recovery Act and the Environmental Protection Agency's regulation on Boiler and Industrial Furnaces. However, Cole and Action fail to point out one important point, that the federal statute at issue in *LaFarge* allowed the state to enact requirements which were more stringent than the federal law. *LaFarge,* 813 F.Supp. at 508. In addition, the court concluded that the state law did not result in an absolute prohibition of federal law.

Action and Cole rely on *LaFarge* in arguing that the facts in this case are comparable. In *LaFarge,* the court did not find that prohibiting the disposal of hazardous waste within a specified area was preempted by federal law. Cole and Action believe that the Lawrence County ordinance is attempting to achieve the same result as the Texas statute in *LaFarge.* The two are not comparable. *LaFarge* did place limits on disposal within a certain area, but those limits were based upon specific criteria. The Lawrence County ordinance does not have any conditions or criteria for its prohibition of surface mining with the Spearfish Canyon.